Board of Registration in Medicine
No. 94-219

## Appeal of Stephen O. Dell, M.D.

## (New Hampshire Board of Registration in Medicine)

December 6, 1995

*Wiggin & Nourie, P.A.*, of Manchester (*W. Wright Danenbarger & a.* on the brief, and *Mr. Danenbarger* orally), for the petitioner.

*Jeffrey R. Howard*, attorney general (*Monica A. Ciolfi*, senior assistant attorney general, on the brief, and *Douglas N. Jones*, assistant attorney general, orally), for the State.

BATCHELDER, J. The petitioner, Stephen O. Dell, M.D., appeals from a decision of the New Hampshire Board of Registration in Medicine (board) denying his application for medical relicensure. Although the petitioner presents numerous questions for review, we will address only his arguments that the board: (1) breached the terms of a prior consent order concerning his relicensure; (2) erred in requiring him to seek reinstatement, rather than renewal, of his license; (3) denied him due process under the State and Federal Constitutions by depriving him of the right to a fair and impartial hearing, and relying, in part, on stale claims; and (4) erred in that its decision is not supported by the evidence and is therefore unjust and unreasonable. We affirm. The petitioner's remaining arguments are without merit and do not warrant further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

The petitioner is a neurosurgeon who was first licensed to practice medicine in New Hampshire in 1982. In August 1989, disciplinary proceedings were instituted after the board learned that the petitioner had lost his medical staff privileges at three New Hampshire hospitals. Specifications were filed by the prosecutor for the board which, as amended, charged that the petitioner engaged in negligent and incompetent conduct relative to the medical care and treatment of certain patients and made false representations on his medical license application, on applications for staff membership and privileges at certain hospitals, to patients, in medical records, and to the public. *See* RSA 329:17, VI (a), (c), (d), (g) (1984) (amended 1992, 1993). When the evidentiary hearing commenced in March 1990, the prosecutor withdrew the charges of medical negligence and incompetence because they could not be proved. The hearing was adjourned shortly thereafter.

In June 1990, the petitioner and the board entered into a consent order. The petitioner admitted to certain violations of RSA 329:17, VI (d) and (g) involving dishonesty and was reprimanded and ordered to fulfill certain requirements not here relevant "before

renewing his New Hampshire license." The consent order, however, effectively precluded the petitioner from renewing his license before the licensing year ended on June 30, 1990. It also provided that all other charges were to be marked *nolle prosequi.*

In July 1990, believing he had fulfilled his obligations under the consent order, the petitioner sought renewal of his license. His request was denied because the medical ethics course he proposed to take to satisfy one of the terms of the consent order had not been approved by the board. In July 1991, after completing an approved ethics course, the petitioner was informed by the board that he needed to file an application for license reinstatement rather than renewal. The petitioner filed the reinstatement application and, at the board's request, furnished certain additional information. His application was considered complete in November 1991.

The following January, the board issued a show cause order which, as amended several months later, indicated that there was probable cause to believe the petitioner was not qualified for licensure. The petitioner requested a hearing and sought the recusal of all board members based upon their alleged bias against him. The board denied the motion for recusal but appointed a retired superior court judge to serve as hearing officer. A three-day evidentiary hearing was held in February 1993, which the board members did not attend. In July, the hearing officer rendered an advisory decision recommending that the petitioner's application be granted.

In January 1994, after memoranda and exceptions to the hearing officer's decision were filed by the parties, the board issued its final decision denying the petitioner's application for reinstatement, finding that he lacked the professional character and medical competence required of a physician to qualify for licensure in New Hampshire. The petitioner filed a timely motion for rehearing, which was denied. This appeal followed.

## I. Standard of Review

The parties disagree over the standard of review we should apply. The petitioner argues that this case was decided under RSA 329:17, which authorizes appellate review of disciplinary action taken by the board under RSA chapter 541. RSA 329:17, VIII (1995). The State argues this matter is a reinstatement proceeding governed by RSA 329:16-e (1984) (amended 1991), and because no authorization to appeal under RSA chapter 541 is provided, this court's jurisdiction may be invoked only by a petition for writ of certiorari. *Petition of Donovan,* 137 N.H. 78, 80, 623 A.2d 1322, 1324 (1993).

Our standard of review for administrative appeals and for petitions for writs of certiorari "differs only slightly." *Id.* We will not

"overturn agency decisions or orders, absent an error of law, 'unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable.'" *Appeal of Stetson*, 138 N.H. 293, 295, 639 A.2d 245, 247 (1994) (quoting RSA 541:13). Certiorari review, on the other hand, is limited to whether the agency "acted illegally with respect to jurisdiction, authority or observance of the law, whereby [it] arrived at a conclusion which could not legally or reasonably be made, or . . . abused [its] discretion or acted arbitrarily, unreasonably, or capriciously." *Petition of Croteau*, 139 N.H. 534, 536, 658 A.2d 1199, 1201 (1995) (quotations omitted). We need not decide which standard applies because under either the petitioner's claims fail. For purposes of this case only, we will apply the RSA chapter 541 standard.

## II. Breach of Contract

The petitioner argues the board breached the terms of the consent order by refusing to relicense him to practice medicine in accordance with RSA 329:16-a (1995). The parties entered into the consent order pursuant to RSA 329:17, X (Supp. 1991) (repealed 1992) which, in June 1990, authorized the board to dispose of any disciplinary matter "by stipulation, agreed settlement, consent order or default." At issue here is the language in the order which provided that "before renewing his New Hampshire license" the petitioner had to satisfy certain obligations. The petitioner argues that the term "renew" should be read as incorporating the license renewal procedure set forth in RSA 329:16-a.

We agree with the petitioner that the consent order is contractual in nature. The meaning of a contract is ultimately a matter for this court to decide. *Butler v. Walker Power*, 137 N.H. 432, 435, 629 A.2d 91, 93 (1993).

> In reviewing a contract, we will give its language the interpretation that best reflects the parties' intentions. In interpreting a contract, we will consider the situation of the parties at the time of their agreement and the object that was intended thereby, together with all the provisions of their agreement taken as a whole.

*Id.* (citations and quotations omitted).

RSA 329:16-a establishes a simple procedure for the annual renewal of medical licenses that involves the submission of a form and the payment of a fee to the board. The only other item the board may require as a condition of renewal is evidence that the applicant actually practiced medicine within the State during the previous

licensing year. The petitioner contends that because the term "renew" has a specialized meaning under RSA chapter 329, it should be interpreted in accordance with that meaning.

 We disagree. Because RSA 329:16-a is not cited anywhere in the consent order and there is no other language which could reasonably lead us to conclude that the term "renew" was intended to refer to the particular statutory licensing procedure, we find that the parties intended to use the term in the more general sense of relicensure. In doing so, we give the term its common meaning, *BankEast v. Michalenoick*, 138 N.H. 367, 369, 639 A.2d 272, 273 (1994), which is simply "to restore to existence" or to "re-establish." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1922 (unabridged ed. 1961). We therefore hold that, under the terms of the consent order, the petitioner was not entitled to renew his medical license pursuant to RSA 329:16-a.

 We also reject the petitioner's argument that the board breached its implied contractual covenant of good faith and fair dealing by considering charges marked *nolle prosequi*. He contends that the effect of marking certain charges *nolle prosequi* was to preclude the board from considering them at a later date. The parties entered into the consent order pursuant to a disciplinary proceeding. Even if the board was barred from considering those charges with regard to future disciplinary action against the petitioner, a question not before us, there is nothing in the consent order preventing the board from considering them in deciding whether he should be relicensed.

*III. Statutory Violations*

The petitioner next argues that the board erred as a matter of law in requiring him to seek reinstatement pursuant to RSA 329:16-e, rather than renewal pursuant to RSA 329:16-a, of his medical license. The board took the position that because the petitioner's license had become suspended pursuant to RSA 329:16-e, it could not simply be renewed in accordance with RSA 329:16-a. Instead, the petitioner was required to comply with the more complicated procedure for license reinstatement established by RSA 329:16-e.

When the petitioner sought to renew his license in 1990 and again in 1991, RSA 329:16-e provided:

> Any failure, neglect or refusal on the part of any person licensed by the board to renew his license as provided in RSA 329:16-a shall automatically suspend his license. Licenses suspended under this section shall not be restored

except upon payment of a restoration fee as established by the board, and a showing of such evidence of professional competence as the board may reasonably require.

The petitioner admits that, under the terms of the consent order, he was precluded from renewing his license before the licensing year ended on June 30, 1990. He contends, however, that because he did not cause his license to be suspended, RSA 329:16-e does not apply.

■ We disagree. First, the petitioner agreed to the terms of the consent order and, in effect, caused his own suspension by engaging in improper conduct. Second, we find no requirement in RSA 329:16-e that a licensee must by his own action or inaction cause his license to be suspended. The statute's use of the word "any" compels the conclusion that the legislature intended a broad sweep. *See DeCato Brothers, Inc. v. Westinghouse Credit Corp.*, 129 N.H. 504, 507, 529 A.2d 952, 954 (1987). The reason for the petitioner's failure to renew his license is therefore irrelevant. Finally, the renewal procedure in RSA 329:16-a applies only to persons "licensed to practice under this chapter." RSA 329:16-a. Because the petitioner did not hold a New Hampshire license on either occasion when he sought relicensure, he could not avail himself of the renewal procedure. We conclude that the board properly required the petitioner to seek reinstatement of his medical license pursuant to the procedure set forth in RSA 329:16-e.

The petitioner next contends that he fully met the requirements for reinstating his license. More specifically, he argues that the board unlawfully reopened its investigation into allegations of dishonesty, unprofessional conduct, and malpractice which, in 1990, had been withdrawn by the prosecutor and marked *nolle prosequi* in accordance with the consent order. This matter requires us to analyze the interrelationship of several sections of RSA chapter 329 pertaining to medical licensure. The issue is whether RSA 329:16-e, when read in conjunction with RSA 329:12, I(b) (1995), and RSA 329:17, VI, authorized the board to consider evidence of these allegations in deciding whether to reinstate the petitioner's license.

■ At all times relevant to these proceedings, RSA 329:16-e provided, in part, that an applicant for reinstatement must make "a showing of such evidence of professional competence as the board may reasonably require." The board's administrative rules enumerated other information that each such applicant was required to furnish. N.H. ADMIN. RULES, Med 305.05, 306.04. At the same time, RSA 329:12, I(b) provided that an applicant for initial licensure had to show that he is "of good moral character," and RSA 329:17, VI

established the various forms of conduct which rendered licensed physicians subject to disciplinary action by the board. We conclude that RSA 329:16-e authorized the board to consider a broad range of factors bearing on professional competence, including allegations of dishonesty and unprofessional and negligent conduct.

First, "[t]he primary purposes of RSA chapter 329 are to assure a high quality of medical care and to protect the public from persons unfit to practice medicine." *Appeal of Plantier*, 126 N.H. 500, 508, 494 A.2d 270, 274 (1985). Where reasonably possible, we will construe statutes "to effectuate their underlying policies." *Town of Gilsum v. Monadnock Reg. School District*, 136 N.H. 32, 36, 611 A.2d 625, 626 (1992); *see Swiezynski v. Civiello*, 126 N.H. 142, 146, 489 A.2d 634, 637 (1985). When we look to the purposes for which the statute as a whole was enacted, we are not persuaded that the legislature intended the public to be less protected from incompetent or dishonest physicians seeking license reinstatement. We will reject proposed interpretations that would "produce unjust and seemingly illogical results." *Psychiatric Inst. of America v. Mediplex*, 130 N.H. 125, 129, 536 A.2d 169, 171 (1987).

■ Second, the language in RSA 329:16-e that provides for a showing of professional competence "as the board may reasonably require" indicates that the legislature intended to vest the board with broad discretion relative to reinstatement. Here, we see no reason to interfere with the board's exercise of its discretion in deciding that allegations of dishonesty and unprofessional and negligent conduct were relevant to its evaluation of the petitioner's professional competence.

■ The board's interpretation of the statutory scheme is reasonable and consistent with the underlying purposes of the statute as a whole and the heightened level of scrutiny which reinstatement entails. We therefore hold that, under the circumstances of this case, the board properly considered factors that would be grounds for denying an initial license application or for disciplining a licensed physician in deciding whether to reinstate the petitioner's license.

*IV. Due Process Violations*

The petitioner next argues that his right to due process under the State and Federal Constitutions was violated when the board deprived him of a fair and impartial hearing, and relied, in part, on stale claims. We address the petitioner's State constitutional claim first, *see State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), citing federal law only if it aids our analysis. *Petition of Smith*, 139

N.H. 299, 302, 652 A.2d 154, 157 (1994). "Because we conclude that federal law is not more favorable to the petitioner, we make no separate federal analysis." *Id.* at 307, 652 A.2d at 160.

The New Hampshire Constitution provides that no person shall be deprived of his life, liberty or property except in accordance with the "law of the land." N.H. CONST. pt. I, art. 15. "[L]aw of the land" means due process of law. *Petition of Grimm*, 138 N.H. 42, 49, 635 A.2d 456, 461 (1993).

■ "We have held that a doctor has a legally protected property right in his license to practice medicine and thus is entitled to procedural due process." *Id.* at 46, 635 A.2d at 459 (quotations omitted). In this regard, we have distinguished "the loss of a privilege once granted . . . from the denial of a privilege that has never been given." *Plantier*, 126 N.H. at 506, 494 A.2d at 273 (quotations omitted). Because the petitioner was licensed to practice medicine in New Hampshire for nearly ten years until, as a result of the terms of the consent order, his license became suspended pursuant to RSA 329:16-e, we hold that he still possesses a property right entitled to due process protection in a relicensing proceeding. Given that the petitioner is entitled to due process, we must determine "whether the challenged procedures afford the appropriate procedural safeguards." *Plantier*, 126 N.H. at 506, 494 A.2d at 273.

### A. Fair and Impartial Hearing

The petitioner argues that he was denied a fair and impartial hearing because the totality of the board's actions demonstrate that its members were biased against him and had prejudged the case. "An impartial tribunal is an essential element of a fair hearing." *Petition of Betty Sprague*, 132 N.H. 250, 266, 564 A.2d 829, 839 (1989). "Administrative officials that serve in an adjudicatory capacity are presumed to be of conscience and capable of reaching a just and fair result. The burden is upon the party alleging bias to present sufficient evidence to rebut this presumption." *Grimm*, 138 N.H. at 52, 635 A.2d at 463 (citations omitted).

The petitioner makes sweeping allegations of bias against the board. He claims the board shopped for experts, invited the intervention of parties hostile to him, rejected all evidence favoring his relicensure, ignored the findings and conclusions of the hearing officer, and failed to attend the evidentiary hearing or even read the record. The petitioner also cites a conflict of interest by one board member who was a director of a hospital against whom the petitioner had a pending lawsuit, and a pecuniary interest in the

outcome of the case by some or all of the physician board members as "presumed" participants in the malpractice self-insurance fund which paid substantial sums to settle claims filed against the petitioner. Only two of these arguments require extended discussion.

### 1. Hearing Officer's Decision

Pursuant to RSA 541-A:19 (Supp. 1993) (recodified 1994) and N.H. ADMIN. RULES, Med 207.04, the hearing officer was charged with preparing an initial decision including recommendations for disposition of the case. Based upon "the greater weight of the evidence," the hearing officer recommended that the petitioner's license be reinstated. He noted, however, that the record contained substantial conflicting expert opinion evidence:

> As is so apparent from the evidence . . . in this case, there is a considerable difference of opinion between and among the many medical persons consulted. Live testimony as well as evidence by deposition, affidavits, reports, all result in the Hearing Officer having to balance one medical expert against another.

Consistent with an administrative agency's duty to hear and decide all cases over which it has jurisdiction, the general rule is that a hearing officer's decision is merely advisory, and not binding. C. KOCH, ADMINISTRATIVE LAW AND PRACTICE § 6.73, at 520-21 (1985); 2 AM. JUR. 2D *Administrative Law* § 374 (1994); *see Appeal of Lemire-Courville Associates*, 127 N.H. 21, 24, 499 A.2d 1328, 1330 (1985). Although the final decision must be that of the board, the hearing officer's decision is a relevant and important part of the administrative record. KOCH, *supra*. While his findings and conclusions are entitled to weight, KOCH, supra; 2 AM. JUR. 2D *Administrative Law* § 372, they may be accepted, rejected, or modified by the board. KOCH, *supra*; 2 AM. JUR. 2D *Administrative Law* § 374.

We hold, however, that where an administrative agency rejects an advisory decision, it must adequately explain the grounds for such different decision, and fully and particularly set out the agency's decision based upon an independent examination of the record. KOCH, *supra*; 2 AM. JUR. 2D *Administrative Law* § 374. This holding is consistent with the general rule that explicit reasons for a final administrative decision are required. *See Appeal of White Mts. Regional School Bd.*, 125 N.H. 790, 794, 485 A.2d 1042, 1046 (1984); RSA 541-A:20 (Supp. 1993) (recodified 1994). Nonetheless, the agency "need not engage in a point by point refutation of the

[hearing officer's] findings and conclusions and the reasons stated."
2 AM. JUR. 2D *Administrative Law* § 374.

■ A necessary part of our inquiry is whether the board's decision satisfactorily explains the reasons for not following the hearing officer's recommendation. *Medcenter One v. Job Service N.D.*, 410 N.W.2d 521, 524 (N.D. 1987). We disagree, however, with the petitioner's characterization of the standard of review as one of heightened scrutiny and hold that the standard of review is not altered when the hearing officer and the board reach contrary conclusions.

■ The petitioner points to a single paragraph in the board's decision as the only explanation given for not following the recommendation of the hearing officer:

> The Board is aware that the presiding officer's decision recommending [*sic*] granting [the petitioner's] application. This recommendation was based primarily upon a belief that the medical opinion concerning [the petitioner's] competence was evenly divided and that in such circumstances the Investigator should be found not to have met his burden of pursuasion [*sic*]. The Board's review of the record indicates reveals [*sic*] clear evidence of repeated and gross negligence and dishonesty by [the petitioner] in the cases discussed above, and [the petitioner] has not demonstrated that relicensure would somehow be appropriate despite this past misconduct and incompetence.

The petitioner's focus on this limited portion of the board's decision is misplaced. Taken as a whole, the board's decision contains specific findings of fact and a thorough and well-documented analysis that amply support its ultimate conclusions and decision not to relicense the petitioner. *Appeal of City of Nashua*, 138 N.H. 261, 265, 638 A.2d 779, 781 (1994); *Appeal of Portsmouth Trust Co.*, 120 N.H. 753, 759, 423 A.2d 603, 607 (1980); RSA 541-A:20.

The board specifically identified how it viewed the strengths and weaknesses in the evidence and connected that evidence to its findings. For example, in rejecting the petitioner's claim that his "adverse events" to cases handled ratio mitigates against a finding of incompetence, the board found that the petitioner "introduced no reliable evidence" establishing his actual ratio. It also found that "[m]ore importantly, the presence of cases in which negligence did not occur or which conform to a normative rate of complications is not a defense to allegations of negligent or incompetent conduct in specific cases."

Further, the board indicated that it relied on its own expertise in reviewing the medical records and other evidence, noting that "the findings in this decision do not represent esoterica beyond the ken of ordinary physicians." It provided detailed reasons for rejecting the petitioner's testimony on certain matters, and for accepting or rejecting the opinions of other neurosurgical experts, particularly Dr. Saunders. Citing the evidence and its findings, the board found that the petitioner engaged in dishonest, incompetent, and unprofessional conduct in violation of various statutory provisions and portions of the American Medical Association Code of Medical Ethics. In three cases where the record was insufficient to determine whether the petitioner performed in a substandard manner, the board presumed an absence of negligence.

We express no opinion as to whether we would adopt the findings and conclusions of the hearing officer or the board. Where, as here, the record contains substantial evidence supporting each result, the board's final decision will govern. 2 AM. JUR. 2D *Administrative Law* § 372; RSA 541:13 (1974). The board may accept, reject, or modify the hearing officer's decision without violating due process, so long as it adequately explains the grounds for its decision as we have articulated in this opinion. *See* KOCH, *supra*; 2 AM. JUR. 2D *Administrative Law* § 374. We hold that the board's decision to reject the hearing officer's recommendation did not violate the petitioner's right to due process.

### 2. Board Members' Failure to Attend Evidentiary Hearing

The petitioner argues that the failure of every board member to be present at the evidentiary hearing violated his right to due process. We disagree. The general rule in an administrative proceeding is that the board may act on a written record of testimony by witnesses whom its members have not personally seen or heard. *Smith*, 139 N.H. at 303, 652 A.2d at 157; *Grimm*, 138 N.H. at 46, 635 A.2d at 459. "This general rule may apply even in a case where experts are in conflict, when the choice of whom to believe is a function of logical analysis, credentials, data base, and other factors readily discernible to one who reads the record." *Appeal of Seacoast Anti-Pollution League*, 125 N.H. 708, 716, 484 A.2d 1196, 1202 (1984) (quotations omitted). However, this "procedure is not proper where the board elects to make factual determinations as a hearing panel and . . . disposition turns on the credibility of the witnesses' testimony." *Smith*, 139 N.H. at 303, 652 A.2d at 157 (quotations omitted). In such a case, we have held:

> All members of the hearing panel acting as fact finders must be present for testimony . . . that concerns the disputed factual basis of a complaint where determination of those disputed facts rests, in some material part, on the fact finder's assessment of their credibility, as shown by their demeanor or conduct at the hearing.

*Id.; see New England Coalition v. U.S. Nuclear, Etc.*, 582 F.2d 87, 100 (1st Cir. 1978).

The board appointed the hearing officer "to hear the evidence in this case without Board members being present." In addition to the petitioner, the only witnesses who testified at the hearing were two experts, both neurosurgeons retained by the board to evaluate the medical care and treatment provided by the petitioner in certain cases. The remainder of the record, which exceeds 4,500 pages, is largely documentary and consists primarily of medical and hospital records, experts' reports, correspondence, affidavits, depositions, and transcripts of prior hearings before the board and the Vermont Medical Board.

 We hold that this case falls squarely within the general rule. Where, as here, the responsibility for hearing the evidence and making factual determinations, including credibility assessments, was delegated by the board to a hearing officer, the board's role is limited to reviewing the record. *See* RSA 541-A:19. What the record undeniably reflects is a conflict between the opinions of experts drawn from facts documented in medical records and other evidence over which there is little dispute. As the hearing officer remarked:

> In many instances doctors, with impressive credentials, review the same material and arrive at diametrically opposing conclusions. One doctor says the procedure used was wrong and would not be followed by any reasonable neurosurgeon, while another equally qualified doctor testifies or by affidavit states that the examined procedure was correct and proper and would be used by all competent doctors in the particular field.

The board properly resolved evidentiary conflicts by using its own expertise and technical judgment in evaluating the opinion evidence contained in the record. *Grimm*, 138 N.H. at 54, 635 A.2d at 464. We therefore hold that the failure of the board members to be present at the evidentiary hearing did not violate the petitioner's right to due process.

### 3. Other Claims of Bias

With regard to the petitioner's other claims of bias, we hold that the petitioner failed to meet his burden to affirmatively establish that the board or any of its members who participated in the petitioner's reinstatement proceeding had a conflict of interest, entertained ill-will towards him, or unalterably prejudged the facts. *Sprague*, 132 N.H. at 266, 564 A.2d at 839; *N.H. Milk Dealers' Ass'n v. Milk Control Board*, 107 N.H. 335, 339, 222 A.2d 194, 198 (1966). A review of the record does not lead us to conclude that bias by any of the board members violated the petitioner's right to due process.

### B. Stale Claims

The petitioner contends that the board violated his right to due process by denying his application for relicensure based, in part, on past conduct which was the subject of charges marked *nolle prosequi* under the 1990 consent order. Whether the board can consider past allegations of negligence and misconduct is a question that must be examined in the context of the nature of the proceeding and the purposes underlying RSA chapter 329. RSA 329:16-e expressly authorizes the board to examine the professional competence of an applicant for reinstatement. Here, past conduct by the petitioner was cited to support the board's finding of a pattern of negligence and misconduct. We find nothing in the statutory language prohibiting consideration of these factors in a reinstatement proceeding. The board may, in its discretion, determine that such conduct is relevant to the issue of a physician's professional competence. Unlike the six-year limitation established for disciplinary action against a physician, RSA 329:17, XII (1992) (amended 1993), no such limitation applies here; however, the weight which the board confers on a particular act is likely to depend, among other factors, upon when it occurred. In the absence of a showing by the petitioner that he has been prejudiced by the passage of time through a loss of evidence or other event which renders him unable to defend against these claims, *Plantier*, 126 N.H. at 508-09, 494 A.2d at 274-75, we hold that the board properly considered the allegations of negligence and misconduct marked *nolle prosequi* pursuant to the consent order.

### V. Decision and Findings

Finally, we reject the petitioner's contention that the board's decision is unsupported by the evidence and is therefore unjust and unreasonable. "Administrative findings of fact are deemed to be *prima facie* lawful and reasonable," *Grimm*, 138 N.H. at 48, 635 A.2d at 460, and the petitioner has failed to meet his burden of showing that there was no evidence from which the board could

properly make its findings. *Appeal of Briand*, 138 N.H. 555, 558, 644 A.2d 47, 49 (1994); RSA 541:13. Where, as here, the board was faced with conflicting medical evidence, it was "free to disregard or accept, in whole or in part, that [evidence]." *Appeal of Gamas*, 138 N.H. 487, 491, 642 A.2d 925, 927 (1994). "Our task is not to determine whether we would have found differently than did the board, or to reweigh the evidence, but rather to determine whether the findings are supported by competent evidence in the record." *Id.* at 490, 642 A.2d at 927.

*Affirmed.*

BRODERICK, J., did not sit; BATCHELDER, J., retired, sat by special assignment under RSA 490:3; all who sat concurred.