Board of Medicine
No. 96-076

APPEAL OF EDWARD L. ROWAN, M.D.

(New Hampshire Board of Medicine)

June 5, 1997

*John D. MacIntosh,* of Concord, by brief and orally, for the petitioner.

*Steven M. Houran,* acting attorney general (*Douglas N. Jones,* assistant attorney general, on the brief and orally), for the State.

HORTON, J. The petitioner, Edward L. Rowan, M.D., appeals the actions of the New Hampshire Board of Medicine (board) in imposing various sanctions on him for professional misconduct. We affirm.

In October 1993, the board received a letter from Ms. R., a former patient of the petitioner, who alleged that the petitioner had engaged in a sexual relationship with her during the previous two years while she was his patient. Ms. R. also claimed to have

knowledge that the petitioner was planning to move to New Zealand. In November 1993, Ms. R. wrote a second letter to the board withdrawing her complaint. On its own initiative the board issued an order commencing a formal investigation in January 1994. The board sought information concerning not only Ms. R.'s claims, but also the procedures the petitioner used to close his practice and refer his patients to other practitioners.

The petitioner relocated to New Zealand in early 1994 and communicated with the board through his New Hampshire attorney. For several months the petitioner's attorney, the board, and its hearing counsel engaged in correspondence concerning the information and records sought in the board's order. The petitioner declined to produce materials concerning Ms. R. or the closure of his New Hampshire practice, asserting first that the withdrawal of the complaint precluded further inquiry by the board, and later Ms. R.'s lack of consent to disclosure and the absence of a specific complaint as to the closure of his practice.

On May 25, 1994, the board's hearing counsel issued a subpoena for the information. The petitioner complied in part by providing a list of steps taken to close his practice, and moved to quash or modify the subpoena. The petitioner objected to the subpoena for the documents, records, and files of Ms. R. on several grounds, including: that the complaint had been withdrawn, that Ms. R. had instructed the petitioner not to disclose her confidential files based on her State statutory and State and federal constitutional privileges, that the board lacked authority under RSA 329:18 to issue a subpoena for confidential information shielded by RSA 329:26, and that 42 U.S.C. § 290ee-3(b) protected Ms. R.'s records from disclosure because they were records of a federally assisted substance abuse function.

The board denied the motion on July 13, 1994, and by letter of July 21, 1994, hearing counsel again requested the information. The petitioner continued to refuse to turn over the materials. On March 14, 1995, the board issued a show cause order to determine whether the petitioner had committed professional misconduct by his failure to comply with the subpoena and requests for information.

The petitioner responded to the show cause order, stating that he was unable to release Ms. R.'s records without her consent because she had instructed the petitioner, through her counsel, not to release the records, and that he was prohibited from releasing her materials under 42 U.S.C. § 290ee-3 and 42 C.F.R. Part 2, absent her consent or a court order. He contended that the show cause order was an effort to impose contempt sanctions on him and that

since RSA chapter 329 conferred no contempt power on the board, the board was required to follow the procedure set forth in RSA 491:19-:20 to enforce the subpoena.

After a prehearing conference, the board issued a more expansive order on June 9, 1995, directing the petitioner to submit a detailed, good-faith response to allegations concerning Ms. R., and to provide information and materials concerning Ms. R. and the closure of his New Hampshire practice. On June 15, 1995, a second subpoena was issued for the materials. The petitioner again moved to quash the subpoena on substantially similar grounds as he had asserted previously, and on the ground that the requests were overbroad.

The board denied the petitioner's motion to quash on August 10, 1995. On September 15, 1995, hearing counsel moved to impose sanctions on the petitioner for violation of the board's order and subpoenas. The petitioner objected, again asserting that the board must follow the procedure outlined in RSA 491:19-:20 because RSA chapter 329 gave it no authority to sanction the petitioner for failure to comply with a subpoena.

Following an evidentiary hearing, the board held that the petitioner had engaged in professional misconduct by not reasonably responding to the board's inquiries and requests for documents. The board suspended the petitioner's privilege to apply for reinstatement of his New Hampshire license for one year, and thereafter until he complied with the board's request for information. The petitioner's motion for reconsideration was denied, and this appeal followed.

█ We will uphold the board's decision unless it is unreasonable or based on an error of law. *See* RSA 541:13 (1974); *Appeal of Beyer*, 122 N.H. 934, 938, 453 A.2d 834, 836 (1982). The petitioner argues the board was required to proceed to superior court under RSA 491:19-:20 to resolve the dispute over the subpoenaed information. He asserts that because the board concedes that it lacks the power to punish for contempt under RSA chapter 329, RSA 491:19 applies. RSA 491:19 provides:

> Whenever any official or board is given the power to summon witnesses and take testimony, but not the power to punish for contempt, and any witness refuses to obey such summons, either as to his appearance or as to the production of things specified in the summons, or refuses to testify or to answer any questions, a petition for an order to compel him to testify or to comply with the summons *may be filed* in the superior court, or with some justice thereof.

RSA 491:19 (1983) (emphasis added).

■■ When construing the meaning of statutes, we first look to the plain and ordinary meaning of the words used. *See Appeal of Ashland Elec. Dept.*, 141 N.H. 336, 341, 682 A.2d 710, 713 (1996). The statute's plain language indicates that a petition "may be filed" with the superior court. RSA 491:19.

> The intention of the Legislature as to the mandatory or directory nature of a particular statutory provision is determined primarily from the language thereof. Words and phrases which are generally regarded as making a provision mandatory include "shall" and "must." On the other hand, a provision couched in permissive terms is generally regarded as directory or discretionary. This is true of the word "may." It is the general rule that in statutes the word "may" is permissive only, and the word "shall" is mandatory.

*North Hampton &c. Assn. v. Commission*, 94 N.H. 156, 158-59, 48 A.2d 472, 474-75 (1946) (quotations and citations omitted). Here, the statutory language is straightforward. The decision whether to file a petition for contempt sanctions in the superior court lies within the board's discretion. *See* RSA 491:19.

The petitioner contends that this court's interpretation of RSA 491:19 in *Scarborough v. R.T.P. Enterprises, Inc.*, 120 N.H. 707, 422 A.2d 1304 (1980), compels a finding that the procedure outlined in the statute is mandatory. *Scarborough* involved an employment discrimination case before the New Hampshire Commission for Human Rights (commission). The defendant was summoned to the commission hearing by subpoena. *Id.* at 708, 422 A.2d at 1306. When he left the hearing room, the plaintiff moved for contempt, which the commission denied. *Id.* The plaintiff then filed in superior court pursuant to RSA 491:19, but the superior court also declined to find contempt. *Id.* at 709, 422 A.2d at 1306. The plaintiff argued that a party who appears at a commission hearing under a subpoena is in contempt of court if he leaves before he gives testimony and evidence. *Id.* at 711-12, 422 A.2d at 1308. We determined the proper question was whether the superior court abused its discretion in refusing to find the defendant in contempt. *Id.* Relying on the discretionary nature of the contempt power, we found no abuse of discretion. *Id.* at 712, 422 A.2d at 1308.

■ In the course of our discussion, we noted that because the New Hampshire Commission for Human Rights lacks the power to

punish for contempt, "[a] petition for contempt must be filed in superior court, [pursuant to] RSA 491:19." *Id.* The petitioner interprets this as mandating that boards or commissions lacking contempt power must petition the court in all instances in which a defendant or respondent fails to comply with a subpoena. This is not so. Our statement in *Scarborough* recognized that a petition "must" be filed if the board or commission seeks contempt sanctions against the defendant or respondent which it cannot itself impose. *See id.* *Scarborough* does not require a board or commission to seek contempt sanctions in the first instance, however. In the present case, the board had other statutory sanctions available which it chose to employ, *see* RSA 329:17, VII (Supp. 1996), and it was not statutorily required to proceed under RSA 491:19-:20.

█ The petitioner asserts that the discipline imposed on him by the board is the equivalent of civil contempt, *see Scarborough,* 120 N.H. at 712, 422 A.2d at 1308 (civil contempt is for benefit of plaintiff and has a remedial purpose), which the board is not authorized to impose. *See* RSA 329:17 (1995 & Supp. 1996); RSA 491:19-:20 (1983). Upon close examination, we note a critical distinction between contempt sanctions and those which the board ordered in this case. Contempt sanctions issued by a court are in direct response to a witness's refusal to obey a summons or produce documents and are primarily an aid to discovery. *See* RSA 491:19. The stated purpose behind the board's sanctions was to discipline the petitioner for his professional misconduct. The board stated: "[The petitioner's] blatant refusal to provide even minimal assistance with the Board's investigation of Ms. R.'s allegations may well be contemptuous, but the contempt it evidences is towards his legal and ethical responsibilities as a physician." The board chose to discipline the petitioner for his willful and repeated violations of his duties under RSA chapter 329, which it is statutorily empowered to do, *see* 329:17, VI(d), (i), rather than exclusively as a method of compelling his cooperation in the investigation.

The board's sanction was authorized by statute and the board's rules because cooperation with the board is an enumerated element of professional conduct. Licensees or applicants have a statutory duty to provide "detailed, good faith written response[s] to allegations of possible professional misconduct being investigated by the board." RSA 329:18, VII (1995). If requested, they must also provide "complete copies of records concerning any patient whose treatment may be material to allegations of possible professional misconduct being investigated by the board." *Id.* A licensee or applicant who

does not comply with this duty to assist the board in its investigation may be sanctioned. *See* RSA 329:17, VI(d), (i), VII. Likewise, under the New Hampshire Code of Administrative Rules, a person to whom a subpoena is issued, and whose motion to quash or modify is denied, has a duty to comply with the subpoena. N.H. ADMIN. RULES, Med 206.08(b). A person who fails to comply with this rule may have an adverse order issued against him, *id.* 201.02, and the board may employ the statutory remedies available under RSA 329:17. *See id.* 206.08(e).

The petitioner recognizes that RSA 491:19 does not contain any affirmative prohibition on the board's general exercise of authority under RSA chapter 329. He contends, however, that as the more specific statute, RSA 491:19 governs where the two conflict. *See State v. Farrow*, 140 N.H. 473, 476, 667 A.2d 1029, 1032 (1995). We see no conflict between the procedure outlined in RSA 491:19 and the board's authority to discipline a licensee or applicant for misconduct under chapter 329. If the board desires to impose contempt sanctions, it must file a petition with the court or a judge of the court. *See* RSA 491:19; *Scarborough*, 120 N.H. at 712, 422 A.2d at 1308. But the permissive language in 491:19 does not obligate the board to use the petition procedure in place of other disciplinary measures which are at its disposal. *See* RSA 491:19; RSA 329:17, VII.

The petitioner also contends that when a case involves complex legal claims of federal and State statutory privileges and constitutional rights, the court is the appropriate forum to address these issues. This may be so. The legislature, however, has not seen fit to condition the board's power to discipline members of the medical profession on its seeking judicial approval. *See* RSA 329:17, VII. In addition, the petitioner does not ask this court to determine whether the documents and information requested are privileged so as to make the board's action unreasonable or unlawful. *See* RSA 329:17, VIII (1995); RSA 541:7 (1974).

The petitioner further argues that there was no evidence presented at the public hearing to support the board's finding of professional misconduct. *See In Re Dell*, 140 N.H. 484, 497-98, 668 A.2d 1024, 1035 (1995). "Our task is not to determine whether we would have found differently than did the board or to reweigh the evidence, but rather to determine whether the findings are supported by competent evidence in the record." *Id.* at 498, 668 A.2d at 1035 (quotations omitted). In its order, the board found the petitioner had "willfully and repeatedly violated RSA 329:18, VII and RSA 329:17, II(i) [*sic*]" by not responding to the board's requests in

good faith and in a reasonably complete and timely manner. The board concluded that "[t]his misconduct, coupled with [the petitioner's] ongoing refusal to assist the Board in the performance of its regulatory responsibilities by investigating a claim of potentially serious misconduct" warranted the sanction imposed.

In support of its decision, the board recounted its initial request of May 2, 1994, that the petitioner provide information concerning his treatment of Ms. R. and the closure of his practice. The board noted the petitioner was required to make a "good faith written response" to this request under RSA 329:18, VII. In addition, hearing counsel issued a subpoena requesting copies of records and other information pursuant to RSA 329:18, IV-a, V, and VI. The board found that the petitioner did not respond to either the request or the subpoena in a full and meaningful manner. He failed to provide copies of referral letters or notices of closure of his practice. The board also found that the doctor failed to respond to a second, more detailed information request and subpoena issued in June 1995. These requests were based on the board's authority under RSA 329:18, VII and RSA 329:18, V. Finally, the board discussed its reasons for denying the petitioner's motions to quash or modify the subpoena and his objection to the imposition of sanctions.

The petitioner has not demonstrated that the board's finding of misconduct was unreasonable. He had an obligation to respond to the board's inquiries under RSA 329:18, VII. By refusing to do so, he willfully and repeatedly violated the provisions of RSA chapter 329 and the board could discipline him accordingly. *See* RSA 329:17, VI(i).

■ The petitioner next argues that RSA chapter 329 does not authorize the board to suspend his privilege to be relicensed. In deciding whether the statute contemplates such a disciplinary measure, we look to both the primary purposes for its enactment and the language employed. *See In Re Dell*, 140 N.H. at 491, 668 A.2d at 1031. "Where reasonably possible, we will construe statutes to effectuate their underlying policies." *Id.* (quotations omitted). "[T]he primary purposes of RSA chapter 329 are to assure a high quality of medical care and to protect the public from persons unfit to practice medicine." *Id.* (quotations omitted). These goals require that the board possess expansive authority regarding the licensure of medical practitioners and broad authority to discipline members of the profession.

The language of the statute supports this conclusion. The board is authorized to take disciplinary action by suspension, limitation, or

restriction of a license. RSA 329:17, VII(b). "[A] showing of such evidence of professional competence as the board may reasonably require," RSA 329:16-e (Supp. 1996), is necessary for a lapsed license to be restored. *See id.* In addition, we have deferred to the board in the area of relicensure and renewal of medical licenses. *See In Re Dell*, 140 N.H. at 488-91, 668 A.2d at 1029-31.

In sum, the statute's stated purpose, the discretionary language used, and our prior interpretation of RSA chapter 329 all evidence an intent to vest the board with broad discretion in the areas of medical licensing and discipline. To interpret the statute as prohibiting the board from suspending the petitioner's privileges to be relicensed would be illogical. *See id.* at 491, 668 A.2d at 1031 (rejecting statutory interpretations which "would produce unjust and seemingly illogical results").

■ Finally, the petitioner asserts that the board lacked jurisdiction to discipline him since he was not a licensee when the formal public hearing was conducted. The board is obligated to investigate any matter within the scope of RSA chapter 329 and undertake disciplinary proceedings against licensees. RSA 329:2, II(b), (c) (Supp. 1996). The rules relative to the professional standards of medical license holders declare that "the surrender or the non-renewal of a license shall not preclude the Board from investigating or completing a disciplinary proceeding based upon the licensee's professional conduct while the license was still in effect." N.H. ADMIN. RULES, Med 405.01(a). The board was merely following its statutory guidelines and its rules and regulations. *Cf. Appeal of Nolan*, 134 N.H. 723, 728, 599 A.2d 112, 115 (1991). The petitioner held a valid license through June 1995. Although the board did not hold a hearing until October 1995, its investigation began in January 1994. In March 1995, it instituted a show cause proceeding to determine whether discipline should be imposed on the petitioner for failure to comply with an outstanding subpoena and requests for information. Because the petitioner held a valid license at these points in time, the board had the authority to pursue the investigation and attendant disciplinary sanctions.

*Affirmed.*

BROCK, C.J., did not sit; the others concurred.