NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2018-0332


RON L. BEAULIEU & COMPANY

v.

NEW HAMPSHIRE BOARD OF ACCOUNTANCY

Argued: April 18, 2019
Opinion Issued: June 25, 2019


Vanacore Law Office, of Concord (John G. Vanacore on the brief and orally), for the plaintiff.


Gordon J. MacDonald, attorney general (Seth M. Zoracki, assistant attorney general, on the brief and orally), for the defendant.


HANTZ MARCONI, J. The plaintiff, Ron L. Beaulieu & Company, appeals an order by the Superior Court (Kissinger, J.) affirming an order of the New Hampshire Board of Accountancy. The Board suspended the plaintiff's license to do business in New Hampshire for three years and imposed a $5,000 fine after concluding that the plaintiff committed professional misconduct by failing to retain work papers and records for five years and by failing to properly conduct auditing services for Tri-County Community Action Program (TCCAP) from 2008-2011. We affirm.

The trial court recited the following facts. Ron Beaulieu is a licensed certified public accountant (CPA) in Maine who owns Ron L. Beaulieu & Company, which is licensed to do business in New Hampshire. TCCAP is a New Hampshire voluntary corporation registered as a charity with the Charitable Trusts Unit (CTU) of the Attorney General's Office. TCCAP retained Beaulieu to provide auditing services for the agency from 2008 to 2011. Each year the plaintiff performed financial statement audits and compliance audits as of June 30.

In December 2012, the Attorney General received notice of serious financial problems at TCCAP and subsequently initiated an investigation. In January 2013, the plaintiff received a letter from a Special Trustee for TCCAP appointed by the Probate Court at the behest of the New Hampshire Attorney General advising it to "immediately place [its] insurance carriers on notice of potential claims from TCCAP based upon the audits and services [it] performed for TCCAP." In July 2015, following the investigation, the Attorney General issued a report (Report) revealing that a number of factors contributed to TCCAP's financial failure, including the plaintiff's "incomplete and inaccurate reports" and failure "to detect or report internal control weaknesses and improper accounting procedures."

The Board of Accountancy initiated an investigation after it became aware of allegations that the plaintiff had failed to properly conduct auditing services for TCCAP. See RSA 309-B:11, I (2015). The Board found that there was probable cause to commence a disciplinary proceeding, see RSA 309-B:12, I (2015), and held a hearing in April 2017 at which Beaulieu and Thomas Musgrave, a member of the Board who assisted with the investigation and was therefore recused from deliberating with the Board, testified. A number of exhibits, including the Report, were admitted into evidence, and the Board Chair stated the Board would give "weight to them as [it] deem[ed] appropriate."

In July 2017, the Board issued its Final Decision and Order. In it, the Board unanimously concluded that New Hampshire Administrative Rule, Ac 404.03(g) required the plaintiff to keep all records related to the audits of TCCAP for a minimum of five years, and, therefore, its failure to "retain work papers and/or all records of [its] work file for all audits conducted of TCCAP" for a five-year period constituted professional misconduct. See N.H. Admin. R., Ac 404.03(g) ("A CPA shall ensure that the work product and the work papers created in the performance of an engagement for a client are retained for a minimum of 5 years after creation unless the CPA is required by law to retain such records for a longer period."). The Board reasoned that after Beaulieu received notice in January 2013 that TCCAP may file a claim, "at a minimum, he should have ensured that no records were destroyed, including but not limited to his work file, that recorded his notes documenting the basis for his findings. . . . However, [Beaulieu] did not even ensure that the required work

2

file [was retained] for three years [the time period he told the Board he thought was applicable under federal law] as he himself conceded."

The Board also unanimously concluded that the plaintiff "was in violation of . . . RSA 309-B:10, I-a(e) and/or (j) in that he committed professional misconduct in failing to properly conduct auditing services for TCCAP for fiscal years 2008 through 2011." The Board noted that the plaintiff's 2008 audit did not disclose the reason for a $1.6 million prior period adjustment, and that Beaulieu agreed at the hearing that the failure to include a disclosure was a mistake. The Board also found that the plaintiff's 2011 audit "misstated the financial condition of [TCCAP] resulting in over $516,000.00 of unfavorable prior period adjustment[s] for the FY 2012 audit, including [an] overstatement of cash of $460,000.00." The Board stated that Beaulieu was "unable to explain" these "unfavorable periods of adjustments" at the hearing. The Board also noted that the subsequent auditor identified more than twenty "material weaknesses specifically related to the findings of systems of internal controls of the agency," and therefore the plaintiff's "audit finding that TCCAP was low risk for those years was inaccurate." Finally, the Board referred to a statement in the Report about TCCAP's financial failure which indicated that the plaintiff prepared incomplete and inaccurate reports and otherwise failed to detect certain issues with TCCAP's internal controls and accounting procedures. The Board unanimously voted to impose sanctions including a three-year license suspension and a $5,000 fine. The Board subsequently denied the plaintiff's motions to reconsider, stay, and dismiss charges of misconduct.

The plaintiff appealed to the superior court. See RSA 309-B:12, X (2015) (allowing a person or firm adversely affected by a Board order entered after a hearing to appeal by filing a written petition with the superior court). It argued, among other things, that the Board misinterpreted the relevant statutes and administrative rules related to record retention, that the Board's conclusions regarding the quality of its audit work were unreasonable or unlawful, and that the Board unlawfully shifted to the plaintiff the burden of proving that it had not engaged in professional misconduct. The court affirmed those portions of the Board's order at issue in this appeal and this appeal followed.

On appeal, the plaintiff argues that RSA 309-B:19 (2015) and Ac 404.03(g), when properly interpreted, require retention of client records for five years but do not "define a retention period for auditors' proprietary Audit Work Papers." Alternatively, it asserts that if Ac 404.03(g) does apply to auditor work papers, the rule is unlawful because it adds to the statute and therefore exceeds the Board's rulemaking authority. It also contends that the court lacked "substantial evidence" demonstrating that the 2008-2011 audits of TCCAP constituted professional misconduct because the Board had to

3

identify "facts which constitute professional misconduct," and not just rely upon conclusions in the Report which, it asserts, was not admitted into evidence. The plaintiff contends that no other evidence supports the conclusion that it committed professional misconduct. It further asserts that the Board, in stating that "[t]here was insufficient evidence, if any, submitted by [the plaintiff] to rebut [evidence of professional misconduct]," erred as a matter of law because it improperly shifted the burden of proof.

RSA 309-B:12, X specifies that the superior court reviews an appeal brought under the statute "pursuant to the procedures and standards of RSA 541." RSA 309-B:12, X. Therefore, the superior court — having chosen not to exercise its right to order a trial de novo — was obligated to treat the factual findings of the Board as prima facie lawful and reasonable and could not set aside its decision absent unreasonableness or an identified error of law. RSA 541:13 (2007). The superior court's task was not to determine whether it would have found differently or to reweigh the evidence, but rather to determine whether the findings were supported by competent evidence in the record. Appeal of Dell, 140 N.H. 484, 498 (1995).

RSA 309-B:12, X does not specify a standard for us to apply when reviewing appeals of the superior court's decision. Therefore, as we have in other cases where the superior court has deferentially reviewed a decision of an administrative board, we will uphold the superior court's decision unless it is unsupported by the evidence or is legally erroneous. See Dietz v. Town of Tuftonboro, 171 N.H. 614, 618 (2019) (applying standard in appeal of trial court review of zoning board decision); Ltd. Editions Properties v. Town of Hebron, 162 N.H. 488, 491 (2011) (applying standard in appeal of trial court review of planning board decision). At the same time, we review interpretations of both statutes and administrative rules de novo. See Appeal of Cole, 171 N.H. 403, 412 (2018).

We use the same principles of construction when interpreting both statutes and administrative rules. Bach v. N.H. Dep't of Safety, 169 N.H. 87, 92 (2016). In construing rules, as in construing statutes, where possible we ascribe the plain and ordinary meaning to the words used. Id. We interpret intent from the statute or rule as written and will not consider what the enacting body might have said or add language that the enacting body did not see fit to include. See Appeal of New England Police Benevolent Ass'n, 171 N.H. 490, 493 (2018).

With these principles in mind, we first consider the plaintiff's arguments regarding the applicable retention period for auditing work papers. Although Ac 404.03 is titled "Retention of Client Records," the plain text of the rule refutes the plaintiff's argument that the five-year retention period therein applies solely to client records and not audit work papers. Although the rule

4

does not define "work papers," it recognizes that not all "work papers" are part of the client's records. See N.H. Admin. R., Ac. 404.03(e) ("Work papers considered part of the client's records shall include but not be limited to . . . ."); N.H. Admin. R., Ac 404.03(f) ("Work papers developed by the CPA . . . which do not result in changes to the client's records, or are not in themselves part of the records ordinarily maintained by such clients, shall be solely the CPA's work papers and shall not be the property of the client."). The rule then establishes a five-year retention period for "work papers," without reference to whether those work papers are part of a client's records: "A CPA shall ensure that the work product and the work papers created in the performance of an engagement for a client are retained for a minimum of 5 years after creation . . . ." N.H. Admin. R., Ac. 404.03(g) (emphasis added). Accordingly, we reject the plaintiff's contention that the rule's five-year retention period applies to client records but not work papers other than client's records because the plaintiff's interpretation adds language to the rule that the enacting body did not see fit to include. See Police Benevolent Ass'n, 171 N.H. at 493.

The plaintiff next argues that if the rule applies to licensee work papers, it impermissibly adds to the statute it was intended to implement. It is well settled that the legislature may delegate to administrative agencies the power to promulgate rules necessary for the proper execution of the laws. Appeal of Mays, 161 N.H. 470, 473 (2011). The authority to promulgate rules and regulations is designed to permit the Board only to fill in the details to effectuate the purpose of the statute. Id. Thus, administrative rules may not add to, detract from, or modify the statute that they are intended to implement. Id. To discern whether Ac 404.03(g) constitutes a proper exercise of the Board's rule-making authority, we first look to the intended scope of the rule-making power granted by the legislature to the Board, and the purpose of the Accountancy Act of 1999. Id. In so doing, we review the plain language of the statute at issue, RSA 309-B:19, in the context of other statutes relevant to the Board's statutorily prescribed authority. Id. at 473-74.

The stated purpose of the Accountancy Act of 1999, RSA chapter 309-B, is "to promote the reliability of information that is used for guidance in financial transactions or for accounting for or assessing the financial status or performance of commercial, non-commercial, and governmental enterprises." RSA 309-B:2 (2015). The Act as a whole regulates the practice of public accounting and comprises a certification or licensing system for that profession, including public accountants, CPAs, and CPA firms. Mays, 161 N.H. at 474. For example, the Act sets forth required qualifications for licensees, see, e.g., RSA 309-B:5 (2015), and lists unlawful acts pertaining to the practice of public accounting, see RSA 309-B:14 (Supp. 2018).

The legislature charged the Board with the "responsibility for the administration and enforcement of" RSA chapter 309-B. RSA 309-B:4, I

5

(2015).  The legislature also required the Board to adopt rules "governing [the Board's] administration, the enforcement of [RSA chapter 309-B] and the conduct of licensees."  RSA 309-B:4, VIII (2015).  The Act identifies numerous specific areas in which the Board is to adopt rules, including "[r]ules for records retention."  RSA 309-B:4, VIII(k).  Thus, the Act gives the Board authority to "fill in the details" with respect to records retention requirements.

In analyzing whether Ac 404.03(g) is within the lawful bounds of that authority, we note that RSA chapter 309-B does not specify a record retention requirement but acknowledges that other applicable statutes may impose such a requirement on licensees.  See RSA 309-B:19, III.  By choosing not to specify a durational requirement for records retention, while simultaneously delegating to the Board the responsibility and authority to adopt "[r]ules for records retention," RSA 309-B:4, VIII(k), the legislature left the creation of a record retention requirement entirely to the Board and left significant room for the Board to "fill in the details."  Mays, 161 N.H. at 475 (highlighting legislature's use of "open-ended language" in delegating authority to the Board to fill in details of applicable statute).  In light of the foregoing, we cannot conclude that the five-year record retention requirement in Ac 404.03(g) exceeds the Board's broad authority to promulgate such rules.  RSA 309-B:4, VIII(k); Mays, 161 N.H. at 475.

Ac 404.03(g) required the plaintiff to "ensure that the work product and the work papers created in the performance of an engagement for a client are retained for a minimum of 5 years after creation."  N.H. Admin. R., Ac 404.03(g).  However Beaulieu conceded that the firm did not ensure retention of its work files for even three years.  Accordingly, we find no basis to reverse the conclusion that the plaintiff committed professional misconduct by "failing to retain work papers and/or all records of his work file for all audits conducted of TCCAP," for a period of five years in violation of RSA 309-B:10, I-a(g) and/or (j) and Ac 404.03(g).

We next consider whether the court erred in affirming the Board's conclusion that Beaulieu's auditing work for TCCAP from 2008 through 2011 constituted professional misconduct.  The trial court, in reviewing the Board's decision, had to accept the Board's factual findings as "prima facie lawful and reasonable," RSA 541:13, and then determine whether those findings were supported by competent evidence in the record.  Dell, 140 N.H. at 498.  The court concluded that the plaintiff had "failed to establish[] it was unreasonable or unlawful for the Board to find that the plaintiff committed professional misconduct by failing to properly conduct auditing services."  The court noted that the Board "describe[d] in detail the facts relied upon in support of its finding of professional misconduct," and further noted that "the Board relied not only on the Report produced following the investigation [of TCCAP], but also on Mr. Beaulieu's own testimony at the hearing."  The court observed that

6

five of the seven members of the Board hold CPA certificates, see RSA 309-B:4, I(a), and that professionals are expected to recognize conduct constituting unprofessional conduct within their profession. See In the Matter of Bloomfield, 166 N.H. 475, 481-82 (2014).

The plaintiff argues that the superior court erred because it "merely repeated the Board's rationale that the Report's conclusions, which had been excluded from evidence, were sufficient, despite the lack of supporting facts, to warrant a finding of professional misconduct." We disagree.

The trial court correctly noted that the Board admitted the entire Report into evidence at the hearing, and that it had the authority to do so. See RSA 309-B:12, VI (2015) ("In a hearing under this section, the board shall not be bound by the technical rules of evidence."); N.H. Admin. R., Ac 210.04(b) ("All data that will reasonably assist the board arrive at the truth shall be admissible, except that irrelevant, immaterial, or unduly repetitious evidence shall be excluded."); Ruel v. N.H. Real Estate Appraiser Bd., 163 N.H. 34, 45 (2011) (administrative agencies have broad discretion in determining the admissibility of evidence). Moreover, the Board relied on Beaulieu's own testimony in addition to the Report in concluding the plaintiff had committed professional misconduct. Beaulieu testified that he could not recall the reason for the $1.6 million prior period adjustment from the 2008 TCCAP audit and conceded it was a "mistake on my part" to not have required TCCAP to provide an "additional disclosure in the notes." With regard to the $516,000 unfavorable prior period adjustment that the 2012 auditor made to the plaintiff's 2011 audit of TCCAP, Beaulieu testified that he stood by the accuracy of the numbers in his audit, but that he had "no idea" as to the reason for the adjustment because he had not "looked at those on an individual adjustment-by-adjustment basis." He also testified that his firm did not keep records of when it deleted files and that it had no system to back up files. Therefore, we conclude competent evidence in the record supports the finding that the plaintiff committed professional misconduct in connection with its audit of TCCAP.

Finally, the plaintiff argues, based on the portion of the Board's order that states that "[t]here was insufficient evidence, if any, submitted by [the plaintiff] to rebut [evidence of professional misconduct]," that the Board unlawfully shifted the burden of proof. However, as the trial court correctly noted, RSA 309-B:12, III (2015) expressly permits a licensee to present evidence and witnesses on the licensee's behalf. Therefore, it was not improper for the Board to note that the plaintiff had not rebutted the evidence which demonstrated that it engaged in professional misconduct. See Lisbon School Committee v. Lisbon Ed. Ass'n, 438 A.2d 239, 243 (Me. 1981).

Any remaining arguments raised by the plaintiff are either not preserved, because the plaintiff did not raise them before the Board in its motion for

reconsideration or otherwise, <u>see</u> RSA 541:3, :4 (2007); <u>Appeal of Coffey</u>, 144 N.H. 531, 533 (1999), or do not warrant further discussion, <u>see</u> <u>Vogel v. Vogel</u>, 137 N.H. 321, 322 (1993).

<u>Affirmed</u>.

    LYNN, C.J., and HICKS and DONOVAN, JJ., concurred.