Rockingham
No. 2001-383

CITIZENS OF EAST DERRY FIRE PRECINCT & a.

v.

TOWN OF DERRY

Argued: July 11, 2002
Opinion Issued: November 18, 2002

*Sumner F. Kalman, Attorney at Law, P.C.*, of Plaistow (*Sumner F. Kalman* on the brief and orally), for the plaintiffs.

*Boutin & Associates, P.L.L.C.*, of Londonderry (*Brenda E. Keith* on the brief, and *Edmund J. Boutin* orally), for the defendant.

BROCK, C.J. The defendant, Town of Derry, appeals from an order of the Superior Court (*Coffey*, J.) vacating the Derry Town Council's decision to change the boundaries of the East Derry Fire Precinct (EDFP), granting the plaintiffs' motion for attorney's fees, and denying the defendant's motion for attorney's fees. We reverse in part, affirm in part, and remand.

The relevant facts are either contained in the record, or are undisputed on appeal. The EDFP is an independent village district within the Town of Derry (Town) created by the legislature in 1935 to provide fire protection services. *See* Laws 1935, ch. 315; RSA 52:1 (1991). The citizens of EDFP pay separate taxes to fund their own fire protection budget and are exempt from the portion of Town taxes that fund the Town's fire protection budget. *See* Laws 1983, ch. 44. RSA 52:5 (1991) (amended 2002) grants the Town Council authority to change the boundaries of a village district.

In March 2000, more than two hundred town residents petitioned the Town Council to review and, if necessary, change the district boundaries of

the Derry Fire District and the EDFP. The Town Council accepted the petition and held two public hearings.

On September 19, 2000, the Town Council voted 4-2 in favor of moving areas from the EDFP to the Derry Fire District. One councilor was recused from the final vote because he was a member of the East Derry Fire Commission.

Following the vote, the plaintiffs, three citizens of the EDFP, filed a petition for certiorari, declaratory judgment and injunctive relief in the superior court. The petition alleged, among other things, that the Town Council lacked authority to change the EDFP's boundaries, and that the vote was unreasonable because the decision did not promote the public interest of EDFP residents and would increase their taxes dramatically without any meaningful effect on public safety. In support of their argument that the Town had acted unreasonably and in bad faith, the plaintiffs cited a 1995 superior court decision ruling that a 1990 vote by the Derry Town Council to change the EDFP boundaries was unreasonable because it "was obviously not taken in good faith based on considerations of Fire Response and Public Safety, but rather to legitimate the existing unlawful taxation." *See East Derry Fire Precinct et al. v. Town of Derry,* No. 91-E-002 (Rockingham County Superior Ct. Apr. 26, 1995). The EDFP filed a motion to intervene, which was granted.

Both the plaintiffs and the EDFP moved for summary judgment, arguing that the Town Council did not have the authority or jurisdiction to change the boundaries of the EDFP because it was not subject to the boundary change provisions of RSA 52:5. The Town objected, filed a cross-motion for summary judgment on the jurisdictional issue, and requested attorney's fees. The trial court denied both dispositive motions and the Town's request for attorney's fees, and held a hearing to determine whether the EDFP adopted the provisions of RSA chapter 52. Following a second hearing, the superior court found that the EDFP was established and organized under PL chapter 57 (1926), and is now subject to the provisions of RSA chapter 52.

After concluding that the Town Council had jurisdiction to change the boundaries of the EDFP, the trial court reviewed the certified record. The court ruled that the vote to redistrict was unreasonable, potentially unlawful and an abuse of discretion. The court also concluded that the Town had acted in bad faith, and therefore granted the plaintiffs' and the EDFP's motion for attorney's fees.

On appeal, the Town contends that the trial court: (1) unreasonably substituted its judgment for that of the Town Council; (2) erred by ordering the Town to pay the plaintiffs' attorney's fees; and (3) erred by

failing to order the plaintiffs to pay the Town's attorney's fees when they filed a baseless motion for summary judgment on the jurisdictional issue. Because the plaintiffs and EDFP have not cross-appealed the court's ruling on the merits of the jurisdictional issue, we consider it only insofar as it relates to the Town's motion for attorney's fees.

*I. The Reversal of the Town's Decision to Redistrict and Grant of Attorney's Fees*

"Review on certiorari is an extraordinary remedy, usually available only in the absence of a right to appeal, and only at the discretion of the court, to determine whether another tribunal has acted illegally in respect to jurisdiction, authority or observance of the law" or has engaged in an unsustainable exercise of discretion or acted arbitrarily or capriciously. *In re Doe*, 126 N.H. 719, 722-23 (1985) (quotation and ellipsis omitted); *State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). Given the limited jurisdiction of a reviewing court on a petition for writ of certiorari, the court has no authority to provide *de novo* relitigation of the original issues or to substitute its judicial discretion for the administrative judgment below. *Runde v. City of Concord*, 128 N.H. 175, 177 (1986).

When, as here, the original certiorari proceeding is in the superior court, the superior court's review is limited to the certified record, and the court reverses the decision of the tribunal below on the grounds that its exercise of discretion is unsustainable, we examine the record to determine whether the exercise of discretion is, indeed, unsustainable. We too are bound by the principle that we cannot make findings *de novo* or substitute our judgment for that of the Town Council. *Hardy v. State*, 122 N.H. 587, 590 (1982). Rather, we uphold the Town Council's decision unless its decision "was so lacking in reason as to be arbitrary, unreasonable, or capricious," or constitutes an unsustainable exercise of discretion. *Id.*

At issue before the Town Council was whether certain geographic areas of EDFP, referred to as areas A, B, C and D, were being adequately served by the East Derry Fire Department. At the time of the hearings, East Derry had only one fire station. Previously, proposals had been made to build a call station to service the northern part of East Derry, but the East Derry voters rejected them. Ultimately, certain residents of East Derry filed a petition with the Town Council to study, and if need be, change the boundaries of the EDFP. The residents were concerned about delays in emergency response times to certain addresses.

The Town Council studied the issue from March until September 2000, during which time it held two public hearings. Although it is unclear from the record when the study was commissioned, the councilors had before them a fire station location study prepared by MMA Consulting Group, Inc., for the Town of Derry and the Derry Fire Department. The fire location study (MMA study) finds that "the Town of Derry (areas serviced by the Derry Fire Department and the East Derry Fire Department) can be effectively serviced by four strategically located fire stations." It recommends fire station relocations and assumes that the Derry and East Derry Fire Departments are part of the fire protection system for the entire town.

Evidence presented at the public hearings also demonstrated that areas A and B received much of their fire protection through an automatic response agreement. The automatic response agreement is an informal agreement between the Derry Fire Department and the East Derry Fire Department whereby the station closest to an emergency agrees to respond, whether or not the station and the emergency are in the same district. Testimony suggested that the automatic response agreement should not be the first line of defense to protect homes. Testimony also showed that the Derry Fire Department was consistently the first to arrive at areas A and B.

The Town Council also received evidence of the results of a response time survey conducted at its request. All who participated in the survey agreed to the methodology used to determine how quickly the East Derry and Derry Fire Departments could respond to an emergency in areas A, B, C and D. The survey showed that Derry could respond up to 1.2 minutes faster to an emergency in area A than East Derry, 2.51 minutes faster in area B, forty-five seconds faster in area C, and thirty seconds faster in area D. A staff report submitted into evidence concluded with the following statement:

> The Fire Chiefs and the MMA Consultants Report concur that an increase of one minute or more in response time can significantly impact public safety in many instances. It should also be noted that station location and response time can also impact residents' insurance rates. In order to implement the Fire Study recommendation of having four stations to cover the area effectively and to respond to public safety concerns about the prompt response time, it is recommended that Areas A and B be added to the Derry Fire District. We examined, but did not factor, the tax impact that the possible outcomes would

generate. These are provided for informational purposes only. It is further recommended not to shift C or D, as response time variances are primarily under one minute. Automatic response in these areas should be implemented and evaluated during the next year. In view of Derry's current capital improvement plan and the fire study recommendations, these fire district boundary adjustments are in the best public safety interest of the overall Town of Derry.

Chief Stowers of the Derry Fire Department testified that the response times for areas A and B, but not C and D, were significant. Chief Dionne of the East Derry Fire Department acknowledged at the hearing that the East Derry Fire Department is "weak in protecting" the citizens of the north and northeast sections of the EDFP. The MMA study, the staff report and the chiefs' testimony all support the conclusion that a travel response time gap of one minute is a significant public safety factor.

The Town Council voted 4-2 to move areas A and B, as shown in the August 31 staff report provided by the Town Administrator to the Derry Fire District, effective April 1, 2001. Those who voted in favor of the boundary change noted the response time survey, that areas A and B receive a better response time from stations that are not within the EDFP, and that a minute can make a significant difference in fighting a fire. They concluded that a boundary change would be in the best interests of public safety.

Despite this evidence, the superior court concluded that the Town Council's vote was "unreasonable, an abuse of discretion, and potentially unlawful." The Superior Court examined the record, made a number of findings, and concluded that:

> The balance of the evidence shows that the EDFD loses 48% of their tax base for funding, and that they will be required to provide the exact same services under their present agreements. This is unreasonable. To allow the Town Vote to stand, the Town citizens receive the same or better fire response for half of the cost that they presently pay and the EDFP residents receive the same or less services for twice the taxes. No reasonable Town Selectman [*sic*] could arrive at this conclusion. Additionally, the Court notes that the vote also is suspect because it mandates an immediate reduction in taxes for Town residents, but fire services will not improve (which was the purpose of the vote) for ten years. This seems to be a

"back door" way to attain the tax reduction prevented by Judge Goode in 1995.

The ultimate economic and safety results of redistricting, when combined with the questionable recusal policies of the Selectmen [*sic*] as contained in the certified record, lead the court to conclude that the Town vote was unreasonable, an abuse of discretion, and potentially unlawful.

Having examined the record, we conclude that the superior court misconstrued evidence in the record and substituted its judgment for that of the Town Council.

The superior court apparently concluded that the Town Council's decision was based upon an effort to attain a tax reduction for residents of the Derry Fire District, rather than upon public safety grounds. In support of this conclusion, the superior court reviewed the evidence and concluded that on average the Derry Fire Department arrived at points in the EDFP only thirty seconds faster than the East Derry Fire Department. However, the response time survey, the staff report and the testimony presented to the Town Council all support the Town Council's conclusion that all of areas A and B are reached by the Derry Fire Department faster than the East Derry Fire Department. Indeed, the record clearly reflects that the Derry Fire Department can reach points in area A up to 1.2 minutes faster, and in area B up to 2.51 minutes faster. The MMA study, the staff presentation and the testimony of both chiefs support the conclusion that a response time gap of one minute is a significant public safety factor. Furthermore, contrary to the superior court's conclusion that fire services for the residents of areas A and B would not improve for ten years, the vote to redistrict immediately benefits residents residing in areas A and B by giving the Derry Fire Department primary responsibility to serve them. Under these circumstances, it was error for the superior court to conclude that the Town Council's decision to move areas A and B to the Derry Fire District for public safety reasons was unreasonable.

Furthermore, there is no evidence in the record to support the superior court's conclusion that "[t]o allow the Town Vote to stand, the Town citizens receive the same or better fire response for half of the cost that they presently pay and the EDFP residents receive the same or less services for twice the taxes." Although the plaintiffs and the EDFP asserted that the EDFP stood to lose 48% of the parcels in the EDFP, there was no evidence before the Town Council to support the conclusion that the EDFP would be required to provide the same services.

Finally, the record does not support the superior court's conclusion that the Town employed "questionable recusal policies." The seven Derry Town Councilors are the legislative and governing body of the Town of Derry. The Derry Fire Department is a town department run by the chief, who reports only to the Town administrator. There are no Derry Fire Commissioners. By contrast, the EDFP's legislative body is a "town meeting" of all those who reside within the precinct's boundaries, and its executive body is a three-member board of fire commissioners. The chief of the East Derry Fire Department reports to the board of fire commissioners. The Town Councilor who recused himself from the final vote was serving at the same time as a fire commissioner of the EDFP and, therefore, owed a duty to both the EDFP and the Town. The councilor voluntarily recused himself, a decision we cannot say was unreasonable. Contrary to the superior court's suggestion, nothing in the record supports the conclusion that any of the other councilors should have recused themselves.

Based upon our review of the record, we conclude that the Town Council's decision was not "so lacking in reason as to be arbitrary, unreasonable or capricious." Nor did it amount to an unsustainable exercise of discretion. We therefore reverse the superior court's finding that the Town Council's decision was "unreasonable, an abuse of discretion, and potentially unlawful," and also hold that the superior court erred when it awarded the plaintiffs and the EDFP attorney's fees.

## II. Attorney's Fees and Superior Court Rule 58-A

We next address whether the superior court erred when it denied the Town's motion for attorney's fees. *See* SUPER. CT. R. 58-A. On appeal, the Town does not seek attorney's fees from the plaintiffs. Rather, the Town argues that the trial court erred when it refused to order the EDFP to pay the Town's attorney's fees incurred in defending the jurisdictional challenge.

Shortly after the plaintiffs filed their petition for a writ of certiorari, the plaintiffs and EDFP moved for summary judgment on the grounds that the Town Council lacked jurisdiction to change the EDFP boundaries. They asserted that the EDFP was created by the legislature, not by a petition of the EDFP voters, and that therefore only a majority vote of its citizens or legislative action by the State could change its boundaries. In support of the motion the plaintiffs and the EDFP filed an affidavit of the chief of the East Derry Fire Department, attesting that "the East Derry Fire Precinct was created by the legislature." The Town objected to the

motion and cross-moved for summary judgment, arguing, among other things, that the provisions of RSA 52:5 authorizing the selectmen of towns to change the boundaries of a district apply to all village districts, not just those established by petition. The Town also argued that the summary judgment motion was filed in bad faith and requested attorney's fees.

The trial court rejected the Town's argument, and interpreted the statute as granting the Town power to change the boundaries of village districts only if the village district had adopted the provisions of RSA chapter 52 or was created by a petition of the voters. While the court agreed with the plaintiffs' and the EDFP's interpretation of the statute, it denied their motion for summary judgment, concluding that evidence would be required to determine whether the EDFP ever adopted the provisions of RSA chapter 52.

Following an evidentiary hearing, the court ruled that the EDFP was established and organized under PL chapter 57 which is now RSA chapter 52. The court noted that the enabling act, which is entitled "Relating to the Establishment of the East Derry Fire Precinct" and contained in Laws 1935, chapter 315, provides:

> Authority is hereby given for the establishment of a precinct in the town of Derry to be called the East Derry Fire Precinct
> . . . .
>
> . . . .
>
> Within thirty days after the passage of this act ten or more legal voters residing within said bounded district may petition a justice of the peace who shall thereupon issue a warrant calling for a meeting of the voters of said bounded district for the purpose of organization. *If no such meeting is called within said thirty days, a meeting may thereafter be called as provided by chapter 57 of the Public Laws as amended for the establishment of village district[s].* Except as otherwise herein set forth the provisions of said chapter 57 shall apply to said organization meeting . . . .
>
> . . . In the fulfillment of the objects of the precinct it shall have the powers and be otherwise governed by the provisions of said chapter 57. . . .

(Emphasis added.) The court then reviewed the evidence and agreed with the Town that because the EDFP failed to hold a meeting within thirty days of its enabling act's effective date, the precinct was established at a

meeting called pursuant to PL chapter 57, and it was organized to be subject to the chapter. The court noted that the Town had conducted extensive historical research and presented the court with documents and other evidence to verify how and when the EDFP was established. The only evidence the plaintiffs and the EDFP presented at the hearing to support the conclusion that RSA chapter 52 was not applicable was the testimony of Arthur E. Reynolds, a former EDFP firefighter and fire commissioner. Reynolds stated that to his knowledge, the EDFP had never adopted the provisions of RSA chapter 52. However, he could not testify about any EDFP meetings prior to 1958, and, upon cross-examination, acknowledged that he himself had petitioned the Town Council to change the EDFP's boundaries.

The Town renewed its motion for attorney's fees. The Town noted that because of a "bald assertion" made in the summary judgment motion that the EDFP had never adopted RSA chapter 52, the Town had been forced to spend close to $30,000 on records searches to gather evidence to refute the assertion. The trial court denied the Town's request.

Superior Court Rule 58-A authorizes the court to award attorney's fees "[i]f it appears to the court at any time that any motion for summary judgment or affidavit has not been presented in good faith or has been presented solely for the purpose of delay." SUPER. CT. R. 58-A. We give deference to a superior court's decision on attorney's fees, and will reverse only if the decision was clearly untenable or unreasonable to the prejudice of the objecting party. See Glick v. Naess, 143 N.H. 172, 175 (1998).

■ Having reviewed the record, we cannot say that the superior court's decision to deny the motion for attorney's fees was clearly untenable or unreasonable to the prejudice of the Town. While the record supports the Town's assertion that at no point prior to or during the litigation did the EDFP consult its own records to determine whether it had ever adopted RSA chapter 52, we cannot say that such evidence is sufficient to justify reversing the superior court's finding of no bad faith. The record shows that the EDFP relied upon information provided by longtime members of the precinct to support its argument regarding jurisdiction. That the Town performed a records search to support its position does not conclusively demonstrate that the EDFP filed its summary judgment motion in bad faith. Similarly, while there is evidence in the record to support the conclusion that certain of the EDFP fire commissioners had been informed by attorneys that the Town Council had jurisdiction to change the boundaries of the EDFP, such evidence is insufficient to persuade us that

the decision to deny attorney's fees was untenable and unreasonable to the prejudice of the Town. We therefore affirm the decision of the trial court.

*Reversed in part; affirmed in part; and remanded.*

NADEAU, DALIANIS and DUGGAN, JJ., concurred.