Merrimack
No. 2010-828

CHRISTOPHER RUEL

v.

NEW HAMPSHIRE REAL ESTATE APPRAISER BOARD

Argued: September 22, 2011
Opinion Issued: December 15, 2011

*Bianco Professional Association*, of Concord (*Thomas P. Colantuono* on the brief and orally), for Christopher Ruel.

*Michael A. Delaney*, attorney general (*Lynmarie C. Cusack*, assistant attorney general, and *Kristen A. Fiore*, attorney, on the memorandum of law, and *Elyse S. Alkalay*, attorney, orally), for the New Hampshire Real Estate Appraiser Board.

LYNN, J. Christopher Ruel, a licensed real estate appraiser, appeals an order of the Superior Court (*McNamara*, J.) remanding his case to the New Hampshire Real Estate Appraiser Board (Board) for a new disciplinary hearing. We affirm.

The pertinent facts, as established by the record, are as follows. In the spring of 2007, Kenneth Frederick hired Ruel to appraise his property in Kingston. The New Hampshire Department of Transportation (DOT) sought to take Frederick's property by eminent domain and Frederick used Ruel's appraisal in negotiating a settlement with DOT. DOT performed its own appraisal and valued the property at approximately fifty thousand dollars less than did Ruel. After finalizing the settlement, a DOT appraisal supervisor, George LeMay, reviewed Ruel's appraisal and filed a grievance against him with the Board on September 25, 2007.

On November 16, 2007, the Board voted to investigate the grievance and assigned the case to an investigator, Peggy Gallus. Later, it was assigned to

Barry Shea for a second investigation. Ruel received notice of the allegations in an April 25, 2008 letter from the Board. Shea submitted his report to the Board on October 30, 2008, noting Ruel's "substantial" non-compliance with the professional rules. On December 2, 2008, Ruel failed to appear for a scheduled meeting with Gallus, the grievance officer in charge of his matter, but the two had several phone calls discussing possible sanctions. Later, pursuant to Board procedure, the Board sent Ruel a proposed settlement. In April 2009, the Board granted Ruel's request to extend the deadline to respond to the settlement offer.

After Ruel rejected the settlement offer, the Board voted to schedule a hearing for November 13, 2009. Ruel received notice of this hearing in a letter dated August 27, 2009. The Board continued the hearing until December 18, 2009, so that its investigator, Shea, would be present to testify. At the hearing, both Shea and Ruel testified; however, during Ruel's testimony, one Board member left the hearing and did not participate in deciding his case. Ruel submitted requests for findings of fact and rulings of law, which were ruled on at a public hearing on February 12, 2010. In April 2010, four members of the Board voted to order Ruel to pay a $500 fine and attend two appraisal courses.

Ruel sought certiorari review in the superior court, alleging several errors in the Board's procedures. The superior court rejected most of Ruel's arguments, but remanded the case to the Board for another hearing because the Board conducted a portion of the disciplinary hearing and issued its final order without a quorum of its membership participating. This appeal followed.

On appeal, Ruel argues that the superior court should have dismissed the Board proceedings against him because: (1) LeMay lacked standing to file the initial grievance and, therefore, the case should never have been heard; (2) the Board violated its governing statute by taking more than two years to dispose of his case; (3) the Board's delay materially prejudiced him; and (4) the Board's determination to continue with the hearing and render a final decision without a quorum violated his due process rights. In addition, Ruel contends that the superior court erred in not reviewing Shea's qualifications and competency to testify as a witness. Finally, he asks us to award attorney's fees.

## I

Before considering Ruel's arguments, we first review generally the regulatory scheme for real estate appraisers established by RSA chapter 310-B. This is the first occasion we have had to address this statute. Enacted in 1991 to bring New Hampshire into compliance with Title XI of the federal Financial Institutions Reform, Recovery, and Enforcement Act

of 1989, 12 U.S.C. §§ 3310, 3331 (Supp. 2011), RSA chapter 310-B establishes a comprehensive system for the regulation of individuals who perform real estate appraisals in connection with "federally-related transactions";[1] *i.e.*, any real estate transaction in which a federally regulated financial institution provides funding. *See* RSA 310-B:2, IX, X, XI (2005 & Supp. 2011). The statute creates a real estate appraiser board of seven members (RSA 310-B:4, I (Supp. 2011)); provides for the licensure of appraisers (RSA 310-B:5 (2005)) and establishes various classes of licenses and certifications (RSA 310-B:6 (Supp. 2011)); sets examination, education and experience prerequisites for the various classes of licenses and certifications (RSA 310-B:7, :8, :9 (2005 & Supp. 2011)); and establishes procedures for the Board to receive and consider grievances and complaints (RSA 310-B:17-a, :17-b (2005)), to hold hearings (RSA 310-B:19 (2005)), and to take disciplinary action against licensees (RSA 310-B:18 (2005 & Supp. 2011)).

To decide the issues raised in this appeal, we must first determine the interplay between grievances and complaints under the statutory scheme. RSA 310-B:17-a (2005) and RSA 310-B:17-b (2005) provide as follows:

**310-B:17-a Grievances.**

I.  All grievances shall be in writing and objectively received and reviewed by the board.

II.  If the board determines that a grievance requires further investigation, it shall be acted upon within 90 days.

III.  Disposition of all grievances shall be voted on by the board.

IV.  The board, on its own motion and in accordance with the provisions of this chapter, shall commence a disciplinary proceeding.

**310-B:17-b Complaints.**

I.  Complaints shall not be accepted for filing with the board unless the grievance procedures in RSA 310-B:17-a have been concluded. The aggrieved party may proceed with the complaint process if the aggrieved party does not agree with the decision of the board.

---

[1] A "federally-related transaction" means "any transaction which: (a) A federal financial institution's regulatory agency or the Resolution Trust Corporation engages in, contracts for, or regulates; and (b) Requires the services of an appraiser." RSA 310-B:2, IX (Supp. 2011).

II.   To be accepted for filing, complaints shall be filed on a form provided by the board.

III.   Properly filed complaints shall be reviewed by the board to determine compliance with this section.

IV.   Upon confirmation that a complaint complies with the provisions of this section, the board shall schedule a disciplinary proceeding on the complaint in accordance with the provisions of RSA 541-A.

In its April 2009 proposed settlement, the Board stated that, if Ruel did not accept its proposed settlement, the "grievance [would] be elevated to a complaint." Despite this representation, the Board now argues that the matter involving Ruel remained a grievance throughout the proceedings before the Board. The Board contends that, after the settlement was rejected, it merely exercised its authority to convene a "grievance hearing" under RSA 310-B:17-a, IV and never elevated this matter to a complaint. We disagree.

██ Although there is no statutory definition of the terms "grievance" and "complaint," the board's regulations supply such definitions. " 'Grievance' means an allegation in writing and submitted to the board that an appraiser has committed misconduct." N.H. CODE ADMIN. R., Rab 202.06 (2007). " 'Complaint' means a written and signed statement delivered or mailed to the offices of the board which complies with Rab 205.03." N.H. CODE ADMIN. R., Rab 202.02. Pursuant to RSA 310-B:17-b, I, and Rab 205.03(a), a grievant who does not agree with the Board's proposed disposition of his or her grievance may file a complaint, in which case the Board is then required to hold an adjudicative hearing to determine what discipline, if any, is appropriate. While both the statute and the regulation could be read to suggest that only a person who disagrees with the Board's resolution of his or her grievance can file a complaint, such a construction would lead to absurd results. If one accepts the Board's position that, in the absence of a complaint filed by a dissatisfied grievant, the initiation by the Board of a formal disciplinary hearing against a licensed appraiser does not convert a grievance into a complaint, the result would be that, even at the conclusion of a full adversary hearing conducted by the Board on its own initiative, a grievant dissatisfied with the outcome could file a "complaint" and thereby force the Board to hold another hearing to address the same issues again. We will not presume that the legislature intended such a wasteful and illogical result. *See Appeal of Geekie*, 157 N.H. 195, 202 (2008) (court "will not interpret statutory language in a literal manner when such a reading would lead to an absurd result" (quotation omitted)).

Rather, the more reasonable construction of the statute is that once the Board has abandoned its efforts to resolve a grievance informally through settlement and has determined to initiate a formal disciplinary hearing, such action has the effect of converting the grievance into a complaint. Both RSA 310-B:17-a, IV and Rab 205.02(b)(9) specifically contemplate that, in response to a grievance, the Board may commence an adversarial disciplinary proceeding on its own motion. RSA 310-B:19 states: "The board shall take no disciplinary action without a hearing," and further provides, "At least 14 days prior to hearing, all parties to a disciplinary hearing shall be served, either personally or by certified mail, return receipt requested, with a written copy of the *complaint* filed and notice of the time and place for hearing." (Emphasis added.) *See also* N.H. CODE ADMIN. R., Rab 208.02(b). When read in the context of the entire statutory scheme, it becomes clear that once the Board commences an adjudicative disciplinary hearing, the grievance procedures described in RSA 310-B:17-a and the corresponding regulations have come to an end and from that point forward the procedures governing complaints apply. *See* RSA 310-B:17-b. Once that complaint has been finally adjudicated by the Board, the matter is concluded, subject to judicial review, and a grievant has no ability to force the Board to engage in a "do-over" by filing a new complaint based on the same alleged misconduct.

## II

We turn now to Ruel's first argument. Ruel contends that LeMay lacked standing to file a grievance and, as a result, the Board should never have heard this case. He argues that, because the Board's governing statute does not specify who has standing to file a grievance, the rule governing who can *appeal* an administrative decision should also apply to who can *initiate* an investigation by submitting a grievance. *See Nautilus of Exeter v. Town of Exeter*, 139 N.H. 450, 452 (1995). He contends that standing should be limited to those "directly affected" by the complained-of actions — in this case, his client, Frederick.

Ruel's position, however, is contrary to the language of the statute and accepted principles of administrative law. The Board's governing statute and administrative rules contain no limitations on who may file a grievance; they require only that a grievance be in writing. *See* RSA 310-B:17-a; N.H. CODE ADMIN. R., Rab 205.01 (a). Unlike in *Nautilis*, in which we required plaintiffs seeking appellate review of a zoning decision to have a "sufficient interest in the outcome of the proposed zoning decision," *Nautilus*, 139 N.H. at 452, here the statute's silence as to standing, together with the informal nature of the grievance process designed to encourage settlement, suggests an intent to permit broad standing. This

view conforms with the generally accepted distinction between participating in agency proceedings, on the one hand, and seeking review of those decisions, on the other:

> The principles underlying the agency's intervention practices . . . are entirely different from the principles that apply [to seeking review of agency decisions]. The [agency] is free to permit third parties to participate in proceedings before it, for such assistance as those parties may offer, without creating a right in those parties to review a negative decision that the [agency] may ultimately make.

*Consolidated Edison Co. of New York v. O'Leary*, 131 F.3d 1475, 1481 (Fed. Cir. 1997); *see also* R.J. PIERCE, JR., 3 ADMINISTRATIVE LAW TREATISE § 16.10, at 1534 (2010). An agency has at least as much discretion to allow parties to submit information about a potential violator's actions, as LeMay did here, as it does to allow interested parties to participate in their proceedings, as in *Consolidated Edison. See also* RSA 541-A:32 (2007) (governing intervention in agency proceedings). In the absence of language delineating more restrictive standing requirements for filing a grievance with the Board, we will not depart from these generally accepted principles of administrative law.

## III

Ruel next argues that the Board failed to comply with two separate ninety-day time limits in the statute, and that such failure deprived the Board of jurisdiction to hear his case. We disagree.

Ruel argues that once the Board determined that LeMay's grievance required further investigation, the Board was required to "act[] upon [the grievance]" within ninety days. RSA 310-B:17-a, II. Further, he argues that, under RSA 310-B:19, once the Board decided to initiate formal disciplinary action, it was required to hold a hearing on his matter within ninety days after he received notice of the allegations. We assume, without deciding, that the Board failed to meet these two statutory time requirements; however, we conclude that this delay did not deprive the Board of its power to proceed with its disciplinary process.

█ █ The time limits imposed by RSA 310-B:17-a, II and RSA 310-B:19 are mandatory, as both statutes provide that the Board "shall" act within a ninety-day period. *See McCarthy v. Wheeler*, 152 N.H. 643, 645 (2005) ("[U]se of the word 'shall' is generally regarded as a command . . . [and] is significant as indicating the intent that the statute is mandatory."). The Board argues, however, that the time limits were not intended to be

"jurisdictional" because they do not implicate a liberty interest. *See Smith v. N.H. Bd. of Psychologists*, 138 N.H. 548, 551 (1994). We agree.

■ "Where the legislature has not provided how its mandatory time limits are to be enforced, we must determine the appropriate mode of enforcement." *In re Cierra L.*, 161 N.H. 185, 188 (2010) (quotation omitted). "Our inquiry focuses upon two factors: consideration of the statutory goals and whether the party seeking relief has shown prejudice as a result of the statutory violation." *Id.* Thus, absent an explicit legislative pronouncement of the appropriate mode for enforcing mandatory time limits, we determine whether such time limits trigger jurisdictional principles by evaluating whether they involve a liberty interest or merely "a general interest in hastening adjudicative dispositions." *See State v. Fournier*, 158 N.H. 441, 446 (2009) (quotation omitted).[2] "Where the legislature, out of liberty interest concerns, has mandated time limits for holding hearings, we have held that personal jurisdiction over a defendant is lost, absent waiver, if the case is not heard within the statutory period." *Fournier*, 158 N.H. at 447 (quotation omitted). In contrast, "[w]here the legislature has prescribed time limits out of a general interest in hastening adjudicative dispositions for the benefit of all parties involved . . . we have been unwilling to treat the time limit as jurisdictional." *Id.* (quotation omitted).

In *Fournier*, we determined that, where civil commitment of violent sexual predators was at stake, *see* RSA 135-E:7, I, :9 (Supp. 2010), mandatory time limits for commitment hearings "were intended to protect the person's substantial liberty interests," and the violation of those time limits "is itself prejudicial to the due process rights of a person subject to involuntary commitment under [the] statute." *Fournier*, 158 N.H. at 449. Thus, we concluded that the time limits for such hearings were "jurisdic-

---

[2] Characterizing mandatory time limits as "jurisdictional," though frequently done by courts, may often be more misleading than illuminating. The United States Supreme Court, discussing time limits similar to the ones at issue here, noted that:

> Jurisdiction . . . is a word of many, too many meanings. This Court, no less than other courts, has sometimes been profligate in its use of the term. For example, this Court and others have occasionally described a nonextendable time limit as "mandatory and jurisdictional.'" But in recent decisions, we have clarified that time prescriptions, however emphatic, 'are not properly typed jurisdictional.' "

*Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510 (2006) (quotations and citations omitted). Although we have neither the occasion nor the inclination to revisit every errant or imprecise deployment of the word "jurisdictional," we note that the dispositive inquiry is one of legislative intent: Did the legislature intend the expiration of a mandatory time limit to prohibit governmental bodies from proceeding with the matter subject to the time limit? *See, e.g., Smith*, 138 N.H. at 551; *In re Robyn W.*, 124 N.H. 377, 381 (1983). Lacking the benefit of a more precise legislative statement as to the proper mode of enforcement, we will continue to adhere to the principles set out in *Fournier*, 158 N.H. at 446-47.

tional in nature" and remanded the case to determine whether the State or the petitioner had delayed the hearings. *Id.* at 449, 453.

There is no indication, either express or implied, that the mandatory time limits at issue in this case were enacted to protect against an "unnecessary infringement on a person's liberty." *Id.* at 447. In fact, the time limits in RSA 310-B:17-a, II and RSA 310-B:19 are nearly identical to those we considered in *Smith.* In that case, we rejected the view that the Board of Examiners of Psychologists lacked authority to initiate disciplinary hearings despite its failure to comply with a statute requiring a hearing within three months of notice of a complaint. *Smith,* 138 N.H. at 550-51. We reasoned that "[w]hile the plaintiffs' interest in a speedy disposition of the proceedings would be vindicated if the board were to lose personal jurisdiction," doing so would thwart the primary purpose of the statute: assuring high quality mental health care and protecting the public. *Id.* at 551. Although the time limits in *Smith* involved important interests, they did not implicate a loss of liberty; thus, the Board in *Smith* retained authority to conduct the disciplinary hearings, even though a mandatory time limit had expired. *See id.; see also Barnet v. Warden, N.H. State Prison for Women,* 159 N.H. 465, 469-70 (2009) (failing to comply with statutory forty-five-day time limit for parole revocation hearing did not violate parolee's due process liberty interests absent a showing of prejudice); *Appeal of Martino,* 138 N.H. 612, 616 (1994) (no loss of jurisdiction where New Hampshire Compensation Appeals Board decision was not issued within the statutorily required thirty days following a hearing); *Robyn W.,* 124 N.H. at 380-81 (no loss of jurisdiction where court did not comply with mandatory sixty-day time limit for the issuance of a decision in a parental rights termination proceeding).

The time limits in this case implicate the same interests as those addressed in *Smith;* they do not implicate a liberty interest. Therefore, the Board retained authority to initiate and carry out disciplinary proceedings against Ruel despite its failure to comply with the time limits imposed by RSA 310-B:17-a and :19.

## IV

Since we conclude that the Board's failure to act within the statutory time frames did not remove its jurisdiction to hear the complaint, we may only reverse the superior court's decision if we find that the delay materially prejudiced Ruel. He argues that the Board's delay of over two years in issuing a final disposition in his case materially prejudiced him by dulling the memory of witnesses (including himself), making it impossible to recreate real estate market conditions, causing him to lose present and

future business opportunities, generating higher insurance premiums and attorney's fees, and creating stress in his life.

■ The judiciary's certiorari jurisdiction is limited and gives a court "no authority to provide *de novo* relitigation of the original issues or to substitute its judicial discretion for the administrative judgment below." *Citizens of E. Derry Fire Precinct v. Town of Derry*, 148 N.H. 510, 512 (2002). The original certiorari proceeding in the superior court was limited to whether the agency unsustainably exercised its discretion or acted arbitrarily, unreasonably, or capriciously. *See id.* And our review of the superior court's decision is limited to ascertaining whether it made an error of law or reached a result unsupported by the record. *See id.*

■ Administrative boards must follow their own rules. *Attitash Mt. Service Co. v. Schuck*, 135 N.H. 427, 429 (1992). A court will not set aside an agency's decision for a procedural irregularity, however, unless the complaining party shows material prejudice. *See Appeal of Concord Natural Gas Corp.*, 121 N.H. 685, 691 (1981). The plaintiff bears the burden of showing that any such irregularities materially prejudiced him. *See Appeal of Comm. to Save the Upper Androscoggin*, 124 N.H. 17, 27 (1983). Further, conclusory assertions of prejudice are insufficient. *See Concord Natural Gas*, 121 N.H. at 691.

■ The relevant dates are the period from September 2007, when the grievance was filed, until December 2009, when the Board reached its final decision. Although this is a significant period of time, Ruel has not demonstrated material prejudice. Even in criminal cases, impacts like being held up to public opprobrium, having to post bail, and the general fading of memories that results from the passage of time, have not been deemed sufficient to constitute a violation of the right to a speedy trial. *See, e.g., Skilling v. United States*, 130 S. Ct. 2896, 2916 (2010); *State v. Locke*, 149 N.H. 1, 10 (2002). In addition, substantial portions of the delay in this case can be attributed to Ruel. For example, he failed to appear for a scheduled meeting with the Board in December 2008 and he delayed responding to the Board's settlement proposal. Under all the circumstances, we conclude that the superior court did not err in ruling that the delay from filing of the grievance to the Board's final disposition did not materially prejudice Ruel.

## V

■ Ruel argues that the Board violated his due process rights by holding a hearing after a lengthy delay and without a five-member quorum. He contends that this alleged violation required the superior court to dismiss his case, rather than remand it to the Board for a new hearing.

Above, we have rejected Ruel's contention that he was materially prejudiced by the delay. *See Appeal of Omega Entm't*, 156 N.H. 282, 288 (2007) (requiring appellant to make a showing of material prejudice to prevail on its due process claim). In addition, even assuming that due process required that the Board not complete his disciplinary hearing without a five-member quorum, he has cited no authority, and we are aware of none, supporting his theory that the remedy for this violation is dismissal, rather than remand to the Board for another hearing.

## VI

Finally, Ruel argues that the superior court erred by failing to rule that the Board should not have allowed Shea to testify. Ruel argues that Shea was not qualified as an expert because he did not conduct a thorough investigation by viewing the appraised property or meeting with him. Again, we disagree.

An administrative agency is given broad discretion in determining the admissibility of evidence. *See, e.g., McLaughlin v. Fisher Eng'g*, 150 N.H. 195, 199 (2003). Moreover, the rules of evidence do not apply to an agency's disciplinary hearings. RSA 541-A:33, II; *see* N.H. CODE ADMIN. R., Rab 208.10.

The record shows that Shea was a certified Uniform Standards of Professional Appraisal Practice instructor who, like Ruel, performed professional appraisals. Further, Shea investigated this case over the course of several months. We cannot say that the Board acted arbitrarily or capriciously in admitting his testimony and report. *Town of Derry*, 148 N.H. at 512. Thus, the superior court correctly rejected Ruel's attempt to predicate certiorari review on this alleged error.

## VII

Because we reject Ruel's arguments on appeal, we also deny his request for attorney's fees.

*Affirmed.*

DUGGAN, HICKS and CONBOY, JJ., concurred.