NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Wetlands Council
No. 2018-0650

APPEAL OF NEW HAMPSHIRE
DEPARTMENT OF ENVIRONMENTAL SERVICES
(New Hampshire Wetlands Council)

Argued: November 6, 2019
Opinion Issued: May 22, 2020

Gordon J. MacDonald, attorney general (K. Allen Brooks, senior assistant attorney general, and Joshua C. Harrison, assistant attorney general, on the brief, and Mr. Brooks orally), for the petitioner.

Cronin, Bisson & Zalinsky, P.C., of Manchester (John G. Cronin and Daniel D. Muller, Jr. on the brief, and Mr. Cronin orally), for the respondents.

HANTZ MARCONI, J. The petitioner, New Hampshire Department of Environmental Services (DES), appeals a decision of the New Hampshire Wetlands Council remanding an administrative order issued by DES that directed the respondents, Bryan and Linda Corr, to cease and desist unpermitted work on their lakefront property. We affirm in part, vacate in part, and remand.

I

A. Underlying Facts

The following facts were found by the Council, or are otherwise derived from the administrative record. The Corrs own property in Moultonborough located on the shore of Lake Winnipesaukee. When they purchased the property, it contained a dry boathouse, positioned approximately two feet from the shore, which was partially collapsed as a result of snow load. The boathouse was considered a "grandfathered" or nonconforming structure for purposes of the Shoreland Protection Act, see RSA ch. 483-B, and DES regulations. The height of the nonconforming structure was approximately seventeen feet.

The Corrs made plans to replace the boathouse. They hired a land use consultant to assist them with the process, which required approvals from the Town of Moultonborough, as well as DES. First, the Corrs filed an application for a Wetlands Permit By Notification (PBN) with DES.[1] This permit was accepted by DES with the following project description: "Replace an existing shoreland structure which was collapsed by snow load with a new structure in exact location and height."

Prior to starting construction, however, the Corrs decided to set the boathouse back from the shoreline approximately ten feet. They sought and were granted a building permit from the Town based on plans that included the ten-foot added distance from the shoreline, as well as an increased height maximum of 27 feet for the structure. The Town zoning ordinance limits the height of structures to 32 feet.

The Corrs next sought to amend their initial PBN filed with DES. DES did not allow the amendment, and instead required the Corrs to file a new PBN, which they did. This Shoreland PBN[2] was accepted by DES with the following project description:

A previously existing grandfathered structure collapsed from snow load. A previous wetlands approval was granted . . . to replace the

---

[1] Pursuant to DES rules governing wetlands, the "repair of an existing docking structure," such as a boathouse, see N.H. Admin. R., Env-Wt 303.04(v), qualifies for the "permit by notification process," N.H. Admin. R., Env-Wt 506.01(a)(5), which allows an applicant to obtain a permit for a minimum-impact project simply by notifying DES of the proposed project. N.H. Admin. R., Env-Wt 303.04, 506.02.

[2] Pursuant to the Shoreland Protection Act and DES rules governing water quality and quantity, a project "that impacts less than 1,500 square feet and adds no more than 900 square feet of impervious area within a protected shoreland" qualifies for the PBN process. RSA 483-B:5-b, I(a)(1) (2013); N.H. Admin. R., Env-Wq 1406.05.

structure in kind.  This application is to replace the structure moving it back 10' as a result of a variance granted by the Moultonborough ZBA.  The project would involve 1,480 SF of temporary disturbance but result in no additional impervious area because the new structure will be the exact footprint of the original structure.  The result would be a more nearly conforming structure.

The form an applicant must fill out to submit a Shoreland PBN application does not require the applicant to submit any information regarding the project's height.

After obtaining the building permit from the Town and the PBN from DES, the Corrs commenced construction.  They spent over $100,000 on the permitted structure.  When the structure was framed and nearing completion, DES visited the site to conduct an inspection, purportedly in response to a complaint the department had received.  Subsequently, DES issued a Letter of Deficiency to the Corrs informing them that the structure was 27 feet tall, and therefore not compliant with DES regulations.

After a series of communications between the Corrs and DES, the department issued an administrative order declaring that the Corrs' structure was not compliant with Env-Wq 1405.03(b)(1) because it was taller than 12 feet in height.  See N.H. Admin. R., Env-Wq 1405.03(b)(1) (restricting the maximum height to 12 feet for accessory structures located within the shoreline and the primary building line).  DES instructed the Corrs that, to be compliant with DES regulations, the building needed to be no greater than 17 feet, the height of the original boathouse.  In addition, the order directed the Corrs to cease and desist construction on their property.  In compliance with the order, the Corrs have not undertaken further work on the building and the structure remains unusable.

B. Proceedings Before the Wetlands Council

The Corrs notified DES that they planned to challenge the department's authority to restrict the height of the structure, and subsequently appealed DES' administrative order to the Council.  In their appeal, the Corrs raised four alternative arguments as to how DES had acted unlawfully and unreasonably in issuing its order: (1) DES lacks statutory authority to restrict the height of buildings within the protected shoreland; should such authority exist, the lack of a standard for determining the height of a building renders that authority unenforceable; (2) DES' authority to restrict height is limited to "small" accessory structures, and the Corrs' structure is not "small"; (3) DES erred in applying its height restriction for small accessory structures to the Corrs' structure, which should have been evaluated by DES as a nonconforming

3

structure under RSA 483-B:11, I (2013);[3] and (4) DES' order should have applied a vested rights exemption or granted the Corrs a waiver of the rules.

After receiving notice of the appeal, the Council requested and received the assignment of a hearing officer from the New Hampshire Attorney General. Prior to a hearing before the Council, DES filed a motion to dismiss, in which it argued that the Corrs had failed to demonstrate that the department had acted unlawfully and unreasonably in restricting the height of the structure, and in failing to apply a vested rights exemption or grant a waiver. DES requested that the motion "be ruled on by the Hearing Officer pursuant to RSA 21-M:3, IX(e)."[4] The Corrs filed an objection to DES' motion to dismiss, expanding upon the arguments raised in their initial petition.

The hearing officer issued an order (dismissal order) granting in part and denying in part DES' motion to dismiss. Assuming the facts alleged by the Corrs to be true, see Hobin v. Caldwell Banker Residential Affiliates, 144 N.H. 626, 627 (2000), and ruling on issues of law, see RSA 21-M:3, IX(d) (2012) (stating that the hearing officer is to "[d]ecide all questions of law presented during the pendency of the appeal"), the hearing officer determined that: (1) the Corrs' structure is an "accessory structure" as defined by RSA 483-B:4, II (2013); (2) DES has the authority to restrict the height of accessory structures pursuant to RSA 483-B:17, IV (2013); and (3) the Corrs' structure was not made "more nearly conforming" than the original nonconforming structure, see RSA 483-B:11, I; N.H. Admin. R., Env-Wq 1408.05, because the height of the structure was increased by ten feet. The hearing officer left the following factual determinations for the Council: (1) whether DES' methodology for measuring height in this case is arbitrary and subject to unfettered discretion; and (2) whether the Corrs were entitled to a vested rights determination or (3) whether the Coors were entitled to a waiver of regulations.

---

[3] RSA 483-B:11, I, states, in relevant part:

> Except as otherwise prohibited by law or applicable municipal ordinance, nonconforming structures located within the protected shoreland may be repaired, replaced in kind, reconstructed in place, altered, or expanded. Repair, replacement-in kind, or reconstruction in place may alter or remodel the interior design or existing foundation of the nonconforming structure, but shall result in no expansion or relocation of the existing footprint within the waterfront buffer. However, alteration or expansion of a nonconforming structure may expand the existing footprint within the waterfront buffer, provided the structure is not extended closer to the reference line and the proposal or property is made more nearly conforming than the existing structure or the existing conditions of the property.

[4] RSA 21-M:3, IX(e) provides that a hearing officer, when designated for a particular appeal, shall "[p]repare and issue written decisions on all motions . . . ." RSA 21-M:3, IX(e) (2012).

Following a hearing,[5] the Council issued an order (initial order), signed by the hearing officer, concluding that, once the Corrs' structure was set back from the shoreline, DES acted unlawfully in regulating it as a newly constructed "accessory structure," to which its 12-foot height restriction applied, see RSA 483-B:17, IV; N.H. Admin. R., Env-Wq 1405.03, rather than as a nonconforming structure replaced by a "more nearly conforming" structure, to which its height restriction did not apply, see RSA 483-B:11 (2013). The Council stated that, given the new placement of the structure 10 feet back from the shoreline, as well as the storm water management features detailed in the structure's design plans, it was possible that the structure had become "more nearly conforming than the existing structure" in compliance with RSA 483-B:11. The Council remanded DES' order to the department for consideration of the structure's compliance with RSA 483-B:11.

DES filed a motion to reconsider, contending that, in its initial order, the Council had improperly overruled a legal determination made by the hearing officer. DES argued that, by ruling that the Corrs' structure should be regulated by the department as a "nonconforming structure" rather than an "accessory structure," the Council had ignored the hearing officer's legal determination that DES has the authority to restrict the height of the Corrs' structure as an "accessory structure." DES also contended that the Council had failed to decide the discrete factual issues reserved for it by the hearing officer in his order on the department's motion to dismiss. The Corrs filed an objection to DES' motion to reconsider, requesting that the Council deny the motion, or, in the alternative, supplement the order with a finding that DES' enforcement of a height limitation in this case is arbitrary, capricious, and unenforceable.

In an order on DES' motion to reconsider (reconsideration order), signed by both the hearing officer and the Council chairman, the Council adopted statements made by the hearing officer during the Council's deliberations on the motion to reconsider, specifically that "the Council's consideration . . . of the applicability of RSA 483-B:11 was tied to the question of height raised by the appellants," was not estopped by the hearing officer's ruling on the motion to dismiss, and, "being a question of applying fact to relevant law," was "within Council authority." See RSA 21-M:3, IX(c) (2012) (stating that the hearing officer shall "[d]eliberate with the council before reaching conclusions on mixed questions of law and fact"). The Council also explained that its wording had been "inexact" when it stated in its initial order that the Corrs' structure was a nonconforming structure "rather than an accessory structure." The Council clarified that "[t]he structure under consideration . . . is a nonconforming accessory structure." Maintaining that a "salient point" of its initial order was that "[t]he structure is a nonconforming structure," the Council reiterated that

_____

[5] At the hearing, the Council heard testimony from respondent Bryan Corr, a Town building code official, a private storm water management consultant, and three employees from DES.

5

the department had "failed to consider that by moving the building back from shore 10 feet, the building is more nearly conforming to RSA [chapter] 483-B."

Turning next to DES' argument that the Council had neglected to decide the factual issues posed to it by the hearing officer, the Council concluded that DES' "height measurement method was unreasonable." It also concluded that, by accepting DES' allegations of fact in its initial order that the Corrs had never submitted documentation claiming a vested rights exemption or requested a waiver, it had denied the Corrs' arguments that they were entitled to the vested rights exemption or a waiver of the rules. Nevertheless, the order stated that "[t]he Hearing Officer noted, and the Council agreed, that in a situation like this, DES is required to make a reasonable effort to consider all statutory avenues and possible waivers to resolve the dispute." This appeal followed.

II

We begin by addressing DES' contention that the final order of the Council is unlawful because it overrules a decision of the hearing officer on matters of law. Our standard of review of the Council's decision is set forth in RSA 541:13 (2007). Appeal of Lake Sunapee Protective Ass'n, 165 N.H. 119, 124 (2013); RSA 21-O:14, III (Supp. 2019). Under this statute, the Council's findings of fact "shall be deemed to be prima facie lawful and reasonable." RSA 541:13. DES, as the petitioner, has the burden of demonstrating that the Council's decision was "clearly unreasonable or unlawful." Id. We must uphold the Council's decision except for errors of law, unless we are satisfied, by a clear preponderance of the evidence before us, "that such order is unjust or unreasonable." Id.

The Council's review of DES decisions is governed by RSA 21-O:14 (Supp. 2019). See RSA 21-O:5-a, V (2012). It is the Council's role to "determine whether the department decision was unlawful or unreasonable by reviewing the administrative record together with any evidence and testimony the parties to the appeal may present." RSA 21-O:14, I-a. Hearings before the Council "shall be conducted in accordance with the provisions of RSA 541-A governing adjudicative proceedings by an administrative hearing officer assigned by the department of justice," and "[a]ll issues shall be determined as specified in RSA 21-M:3, IX." RSA 21-O:14, II.

Pursuant to the version of RSA 21-M:3, IX in effect at the time the Corrs' appeal was before the Council, a designated hearing officer shall:

(a) Regulate all procedural aspects of a proceeding, including presiding over the hearing and any prehearing conferences;

(b) Adopt all findings of fact made by the council except to the extent any such finding is without evidentiary support in the

6

record;

(c)  Deliberate with the council before reaching conclusions on mixed questions of law and fact;

(d)  Decide all questions of law presented during the pendency of the appeal; and

(e)  Prepare and issue written decisions on all motions and on the merits of the appeal within 90 days of the conclusion of the hearing on the merits.  The hearing officer shall provide the council with a proposed written decision on the merits within 45 days of the conclusion of the hearing on the merits.  If requested to do so by the members of the council participating in the discussion, the hearing officer shall meet with those members within the 90 day period to discuss the decision.

RSA 21-M:3, IX (2012).[6]

DES argues that the Council's final order is unlawful because it overrules the decision of the hearing officer on questions of law, determinations of which are to be decided solely by the hearing officer.  See RSA 21-M:3, IX(d). DES contends that, in determining that the Corrs' structure should be regulated by DES as a "nonconforming structure," see RSA 483-B:11, the Council's initial order contravened the hearing officer's conclusion that, because the building was an "accessory structure," see RSA 483-B:17, IV, DES' restriction of its height was proper.  DES further contends that the Council's reconsideration order was similarly unlawful because it departed from the hearing officer's dismissal order, as well as the Council's own initial order, by (1) characterizing the issue presented by DES' motion as a "mixed question of law and fact," and (2) applying applicable law to the facts presented, both in violation of RSA 21-M:3, IX.  In response, the Corrs assert, among other things, that, to the extent the hearing officer and the Council were not compliant with RSA 21-M:3, IX, DES' procedural claim fails, as DES has not succeeded in demonstrating material prejudice.

We will not set aside an agency's decision for a procedural irregularity unless the complaining party shows material prejudice.  Ruel v. N.H. Real Estate Appraiser Bd., 163 N.H. 34, 44 (2011).  DES bears the burden of

---

[6] The current version of RSA 21-M:3, IX, which went into effect on July 1, 2019, is substantially similar but includes an additional requirement that the hearing officer, at the first prehearing conference, "order the parties . . . to participate in mediation if the hearing officer concludes that it is reasonably possible that mediation will result in the resolution of the issues in dispute in the proceeding," RSA 21-M:3, IX(b) (Supp. 2019), and substitutes "100" for "90" in the first and third sentences of IX(e), see RSA 21-M:3, IX(f) (Supp. 2019).

7

showing that any such irregularities materially prejudiced it.  Id.  In making such a showing, conclusory assertions of prejudice are insufficient.  Id.

DES' sole contention of prejudice is that, following the Council's reconsideration order, it was "left . . . in the impossible position of trying to comply with two conflicting final orders."  We disagree with this characterization.  The transcript of the initial hearing deliberations evidences the Council's recognition and consideration of the hearing officer's prior ruling.  Statements by council members made during those deliberations exhibit their acknowledgment that the hearing officer had already determined that height may be restricted by DES under RSA 483-B:17, IV, and that he had reserved "three issues" for the Council's consideration.  The record also indicates that the Council believed that, if it made an affirmative determination on the first issue before it, i.e., that DES' method for determining height in this case is arbitrary and capricious, it would be unnecessary to address the two remaining issues: whether the Corrs were entitled to (1) a vested rights determination or (2) a waiver of regulations.

More importantly, the record supports the hearing officer's acceptance of the Council's determinations in its initial order.  Prior to issuance of the order, the hearing officer e-mailed the Council appeals clerk with his corrections to the order, evincing his approval of the order conditioned on his edits.  In addition, the Council's initial order includes the signatory line, "By Order of the hearing officer," followed by the hearing officer's signature.  Thus, to the extent the Council's initial order conflicted with the hearing officer's dismissal order, the record indicates that the hearing officer expressly adopted those inconsistencies.

The same is true with regard to the Council's reconsideration order.  In its motion to reconsider, DES argued that the Council had failed to address, in its initial order, the three issues reserved for it by the hearing officer.  In the Council's reconsideration order, it explained that, based on comments made by the hearing officer during deliberations on the motion to reconsider, the Council understood that the applicability of the statute governing nonconforming structures was "tied to the question of height raised by the appellants," was not estopped by the dismissal order, and, "being a question of applying fact to relevant law," was "within Council authority."  Although the Council's reconsideration order was signed by the Council chairman, like the initial order, it included the signature of the hearing officer, indicating intent on the part of the hearing officer to join in the reasoning of the Council's order.  The record demonstrates a clear intent on the part of the hearing officer to join in the Council's subsequent orders to the extent they contradicted his earlier rulings.  Therefore, DES has failed to demonstrate material prejudice, and we will not set aside the agency's decision on procedural grounds.  See Ruel, 163 N.H. at 44.

We next consider DES' argument that the Council's decision was unlawful and unreasonable because it ignored DES' 12-foot height restriction, see N.H. Admin. R., Env-Wq 1405.03(b)(1), and interpreted and applied RSA 483-B:11[7] in a manner that grants "seemingly unlimited expansion rights" to the Corrs. In response, the Corrs contend, among other things, that the Shoreland Protection Act, specifically RSA 483-B:17, IV, does not afford DES the authority to restrict their structure's height.[8] They argue that, rather than granting authority to DES to restrict the height of accessory structures generally, RSA 483-B:17, IV confers on DES the limited authority to restrict the height of "small accessory structures such as storage sheds and gazebos." RSA 483-B:17, IV (emphasis added). The Corrs assert that, because their structure is not a "small accessory structure," DES does not have authority to restrict its height pursuant to Env-Wq 1405.03(b)(1).

This issue requires us to interpret both state statutes and administrative rules, and we use the same principles of construction when interpreting both. Petition of Parker, 158 N.H. 499, 502 (2009). We ascribe the plain and ordinary meanings to words used, looking at the rule or statutory scheme as a whole, and not piecemeal. Id. Although we accord deference to an agency's interpretation of its own regulations, that deference is not total. Id. We still must examine the agency's interpretation to determine if it is consistent with the language of the regulation and with the purpose which the regulation is intended to serve. Id. Our review of the agency's interpretation of state law and administrative rules is an issue of law, which we review de novo. See Appeal of Morton, 158 N.H. 76, 78 (2008); RSA 541:13.

The Shoreland Protection Act, RSA chapter 483-B, establishes "standards for the subdivision, use, and development of the shorelands of the state's public waters" to "promote public health, safety, and the general welfare." RSA 483-B:2 (2013). The Act states that "[t]he shorelands of the state are among its most valuable and fragile natural resources and their protection is essential to maintain the integrity of public waters." RSA 483-B:1, I (2013). It also provides that "[t]he state has an interest in protecting [its

---

[7] Because we conclude that DES did not have the authority to restrict the height of the Corrs' structure under RSA 483-B:17, IV, we need not determine whether it was proper for the Council to apply RSA 483-B:11 in considering the lawfulness of DES' administrative order.

[8] We note that this argument was presented by the Corrs in the form of a cross-appeal. DES filed a motion to dismiss the Corrs' cross-appeal, contending that it was barred due to the Corrs' failure to file a motion to reconsider with the Council. The Corrs objected, and, prior to oral argument, we denied DES' motion to dismiss without prejudice to raising the argument in an answering brief. We treat the Corrs' argument not as a cross-appeal, but rather as a response to DES' argument that the Council erred in interpreting and applying RSA 483-B:11. Thus, DES' motion to dismiss is moot.

public] waters and has the jurisdiction to control the use of the public waters and the adjacent shoreland for the greatest public benefit." RSA 483-B:1, II (2013).

RSA 483-B:17, IV, a provision of the Act, authorizes the commissioner of DES to adopt rules relative to "[p]rocedures and criteria for the size and placement of small accessory structures such as storage sheds and gazebos, which are consistent with the intent of [the Act], between the reference line[9] and the primary building line." RSA 483-B:17, IV. Under the authority granted to it by RSA 483-B:17, IV, DES promulgated administrative rule Env-Wq 1405.03, Limitations on Accessory Structures within the Waterfront Buffer, which, according to DES, applies "to accessory structures located between the reference line and the primary building line," and includes a requirement that accessory structures "[n]ot exceed 12 feet in height." N.H. Admin. R., Env-Wq 1405.03(a), (b)(1).

"An administrative agency must comply with the governing statute, in both spirit and letter." Appeal of Rainville, 143 N.H. 624, 627 (1999) (quotation omitted). "Even a long-standing administrative interpretation of a statute is irrelevant if that interpretation clearly conflicts with express statutory language." Id. (quotation omitted). Agency regulations that contradict the terms of a governing statute exceed the agency's authority. Appeal of Gallant, 125 N.H. 832, 834 (1984).

DES would have us interpret RSA 483-B:17, IV to authorize the department to restrict the height of all accessory structures between the reference line and the primary building line. However, that interpretation would ignore the plain language of the statute. See Appeal of Astro Spectacular, 138 N.H. 298, 300 (1994) (stating that, when interpreting a statute, the court "can neither ignore the plain language of the legislation nor add words which the lawmakers did not see fit to include" (quotation omitted)). In RSA 483-B:17, IV, the adjective "small" modifies the phrase "accessory structure," and thereby limits the scope of the provision. Reid v. N.H. Attorney Gen., 169 N.H. 509, 522 (2016) (explaining that the adjectives in a statute modify the words that follow them, and "thereby circumscrib[e] the provision's scope"). We decline to adopt DES' interpretation, as it would render the word "small" meaningless. See Marceau v. Concord Heritage Life Ins. Co., 149 N.H. 216, 219 (2003) (declining to interpret a statute in a manner that would render a phrase within the statute "virtually meaningless").

DES' interpretation would also require us to overlook 483-B:4, II, which defines "accessory structure" as "a structure . . . on the same lot and

---

[9] The "reference line" for lakes is "the surface elevation as listed in the Consolidated List of Water Bodies subject to the shoreland water quality protection act as maintained by [DES]." RSA 483-B:4, XVII(a) (2013).

customarily incidental and subordinate to the primary structure"; "or a use, including but not limited to paths, driveways, patios, any other improved surface, pump houses, gazebos, woodsheds, garages, or other outbuildings." RSA 483-B:4, II. See Petition of Parker, 158 N.H. at 502 (stating that we look at the statutory scheme as a whole, and not piecemeal). In considering the statutory scheme as a whole, the definition of accessory structure in RSA 483-B:4, II is quite broad compared to the language used in RSA 483-B:17, IV. DES' authority to impose size[10] restrictions under RSA 483-B:17, IV is limited to "small accessory structures such as storage sheds and gazebos," rather than accessory structures generally, as DES contends. Furthermore, accepting DES' interpretation would also be at odds with the absence in the Act of height limitations on primary structures.

Finally, we examine an agency's interpretation of its own regulation to determine if it is consistent with the purpose which the regulation is intended to serve. Petition of Parker, 158 N.H. at 502. DES has failed to demonstrate, particularly in the circumstances of this case, how height has any relation to the protection of the public waters and the adjacent shoreland. See RSA 483-B:1, II, :17, IV (limiting DES' authority to adopt rules relative to the size of small accessory structures to those that "are consistent with the intent" of the Act). Indeed, the Council found that "[t]he height of the [Corrs'] structure has no negative impact on water quality or wetlands," and DES has not alleged any violation of department rules other than the height requirement of Env-Wq 1405.03(b)(1). See RSA 483-B:5-b, I(a) (2013) (stating that projects qualify for PBNs when they "have no impact on water quality" and "follow department rules").

We agree with the Corrs that DES did not have the authority to limit the height of their structure. The plain language of RSA 483-B:17, IV does not grant DES the authority to restrict the height of all accessory structures, only those that are "small." RSA 483-B:17, IV. The Council found that "[t]he structure in dispute is not a small accessory structure such as a gazebo or a shed," and this finding is "deemed to be prima facie lawful and reasonable." RSA 541:13. Given our determination that DES is without such authority, it necessarily follows that the height requirement set forth in Env-Wq 1405.03(b)(1) does not apply to the structure.

Contrary to DES' assertion, this determination does not mean that structures such as the Corrs' are entirely outside the bounds of state regulation. Accessory structures that are not considered small must still meet the provisions of the Act that govern structures located within the protected shoreland. In

---

[10] Given our previous determination that "size" means "physical magnitude, extent, or bulk: the actual, characteristic, normal, or relative proportion of a thing," Cosseboom v. Town of Epsom, 146 N.H. 311, 315 (2001) (citing Webster's Third New International Dictionary 2131 (unabridged ed. 1961)), we interpret the plain meaning of "size" to encompass "height."

addition, a structure's height is subject to municipal zoning restrictions. The Corrs were aware of these restrictions, which is why they hired a land use consultant to assist them with the permitting process. They received approval from the Town for their redevelopment plan, and stayed within the height requirements prescribed by the Town: constructing a 27-foot building in compliance with the Town's 32-foot height restriction. Because we conclude that DES did not have the authority to restrict the height of the Corrs' structure under RSA 483-B:17, IV, we need not determine whether it was proper for the Council to apply RSA 483-B:11 in considering the lawfulness of DES' administrative order.

In light of our determination that the Corrs' structure is not governed by Env-Wq 1405.03(b)(1), we affirm the Council's decision to the extent that it concluded that the rule's 12-foot height restriction does not apply to the Corrs' structure. However, we vacate all other aspects of the Council's decision. We remand the matter to the Council with instructions to grant the Corrs' appeal and to vacate DES' administrative order, which relied solely on the alleged height violation. In light of the result reached, we need not address any additional arguments raised by the parties. See State v. Sargent, 144 N.H. 103, 106 (1999) (concluding that result obviated need to address remaining arguments).

<u>Affirmed in part; vacated in part; and remanded</u>.

HICKS, BASSETT, and DONOVAN, JJ., concurred.

12